UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

REGIONAL LOCAL UNION NO. 846,
International Association of Bridge
Structural, Ornamental and Reinforcing
Iron Workers, AFL-CIO, by and through
LUIS QUINTANA, in his representative
capacity as Business Manager; and
REGIONAL DISTRICT COUNCIL
WELFARE PLAN AND TRUST, f/k/a
LOCAL 846 REBAR WELFARE TRUST,
by and through its Board of Trustees;
and REGIONAL DISTRICT COUNCIL
RETIREMENT PLAN AND TRUST,
f/k/a REBAR RETIREMENT PLAN
AND TRUST; by and through its Board
of Trustees; and REGIONAL DISTRICT
COUNCIL TRAINING TRUST, f/k/a
LOCAL 846 TRAINING TRUST; by and
through its Board of Trustees; and
REGIONAL DISTRICT COUNCIL
VACATION TRUST FUND, f/k/a

Case No.: 3:11-CV-658-AC

FINDINGS AND
RECOMMENDATION

Page 1- FINDINGS AND RECOMMENDATION                                 *{SIB}*

LOCAL 846 VACATION TRUST, by
and through its Board of Trustees;

                              Plaintiffs,

            v.

GULF COAST REBAR, INC., a Florida
corporation, f/k/a GULF COAST
PLACERS, INC., a Florida corporation,

                            Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Presently before the court is a motion to dismiss in which defendant Gulf Coast Rebar, Inc. ("Gulf Coast"), asserts for the third time that plaintiffs Regional Local Union No. 846 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO, (the "Union"), the Regional District Council Welfare Trust, the Regional District Council Pension Trust, the Regional District Council Training Trust, and the Regional District Council Vacation Trust (collectively "Plaintiff Trusts), have failed to state viable claims for relief against it in the First Amended Complaint filed on March 20, 2012. Specifically, Gulf Coast argues that: 1) Plaintiff Trusts do not have standing to pursue an action for breach of the collective bargaining agreement entered into between Gulf Coast and the Union on March 13, 2009 (the "Agreement"); 2) this court lacks personal jurisdiction over the Union; 3) neither the Union nor Plaintiff Trusts (collectively "Plaintiffs") are able to state a viable claim for breach of the  Agreement; and 4) the Agreement does not meet the structural requirements of the Labor-Management Relations Act of 1947 ("LMRA"). Alternatively, Gulf Coast moves to either compel arbitration of Plaintiffs' claims

or to transfer this action to the Middle District of Florida.

The court finds that: 1) Plaintiff Trusts have standing to pursue this action; 2) this court has personal jurisdiction over Gulf Coast; 3) the Agreement meets the structural requirements of the LMRA; and 4) Plaintiffs have stated viable claims for breach of the Agreement. Accordingly, the court recommends that Gulf Coast's motion to dismiss the Amended Complaint be denied.

With regard to Gulf Coast's motion to compel arbitration, the court finds that the claims asserted in the Amended Complaint require the interpretation of the Agreement and are subject to the arbitration provisions found therein. Consequently, the court recommends granting the motion to compel the claims asserted by the Union, who is a party to the Agreement and bound by the arbitration provisions, but denying the motion with regard to Plaintiff Trusts' claims. However, the court recommends staying Plaintiff Trusts' claims during the pendency of the arbitration of the Union's claims.

Finally, the court recommends that Gulf Coast's motion to transfer be denied as moot based on the stay of the action pending arbitration, with leave to Gulf Coast to refile the motion to transfer once the stay is lifted.

*Background*

The Agreement provides for the establishment of four jointly-administered fringe benefit plans to be named: (1) the Rebar Retirement Plan and Trust; (2) the Local 846 Rebar Welfare Trust; (3) the Local 846 Vacation Trust; and (4) the Local 846 Training Trust. (Am. Compl. Ex. 1 at 8.) Gulf Coast agreed to be bound by the terms of each of these trusts and to make timely payments into the trusts in the amounts set forth in "Appendix A" for employees covered by the Agreement. (Am. Compl. Ex. 1 at 8-9.) Gulf Coast also agreed to make contributions to "home local pension, health

and welfare, annuity, vacation and other welfare benefit funds" in accordance with the home trust funds' rules and at the customary rates set by the home trust funds on behalf of "all key employees who designate home Local Unions other than the signatory Local Union"; to "check-off" from the wages of employees who voluntarily authorize such deductions for union dues, working assessments, and standard initiation fees; and to remit such amounts "checked-off" to the participating unions on or before the 15th day of each month, together with a list of the employees covered by the payment. (Am. Compl. Ex. 1 at 9-10.)

The Agreement incorporated the terms of the various trust and plan documents, as they currently existed and may be amended from time to time, and required payment to the fringe benefit funds by the 15th day of the month following the month in which work was performed. (Am. Compl. Ex. 1 at 9.) Failure to make such payment would "result in the accrual of interest at a rate of one and one-half percent (1½ %) per month for unpaid balances, plus such accounting fees, attorneys fees, auditing fees, and other expert fees as are necessary if litigation is filed to collect said delinquent amounts." (Am. Compl. Ex. 1 at 9.) Additionally, failure to pay all contributions and file all reports by the 15th of the month following the month in which the work was performed allowed the unions to engage in a work stoppage, strike or other legal economic activity, as well as pursue the grievance procedure set forth in the Agreement, after five days' notice to Gulf Coast. (Am. Compl. Ex. 1 at 9-10.)

The Agreement created a three-step process to resolve "[a]ny question arising out of this Agreement involving its interpretation or application, excluding trades jurisdictional disputes." (Am. Compl Ex. 1 at 5.)

Step 1.   When any employee or the Union subject to the provisions of this

Agreement believes a violation of this Agreement has occurred, acting through the Local Union steward, within three (3) working days after the occurrence or non-occurrence giving rise to the dispute, said employee or the Union shall give notice to the Employer stating the section alleged to have been violated. Failure to raise any dispute within three (3) working days of the occurrence or non-occurrence shall constitute a waiver of the right asserted by the employee. The dispute shall be discussed by the aggrieved employee with the steward and the Employer's representative at the construction site. If the dispute is not settled within twenty-four (24) hours, Step 2 of the Grievance Procedure may be pursued no later than two (2) working days thereafter.

Step Two. The employee, the local business representative of the Union and a representative of the Employer shall meet within ten (10) working days after timely notice of proceeding to Step 2 has been made and endeavor to adjust the matter. At this point the grievance shall be submitted in writing by the business representative of the Local Union to the Employer. If agreement cannot be reached after the meeting between these parties, the matter shall be referred to Step 3 of this Grievance Procedure within three (3) working days thereafter.

Step Three. Failure under Step 2 to reach a decision shall constitute a basis for submittal of the dispute to arbitration for a binding decision. Unless the Employer and the Union can otherwise select an impartial Arbitrator, the Employer and the Union shall choose an Arbitrator from a panel of seven (7) requested from the Federal Mediation and Conciliation Service by alternatively striking a name from the panel until only one arbitrator remains. Costs of the Arbitrator shall be borne equally by the Union and the Employer. The decision of the Arbitrator shall be binding upon all parties.

(Am. Compl. Ex. 1 at 5.) The time limits identified in the steps could be extended by mutual agreement of the parties and failure to process a grievance in a timely manner would be deemed a waiver of the grievance. (Am. Compl. Ex. 1 at 5.)

On May 31, 2011, Plaintiffs filed a complaint naming Gulf Coast as defendant seeking to recover contributions and dues allegedly owed them under the Agreement (the "Complaint"). In the Complaint, Plaintiffs alleged that the Union is a "voluntary unincorporated association existing pursuant to the laws of the State of Florida," the William C. Earhart Company of Portland, Oregon, administers Plaintiff Trusts and "processes union dues checkoff," and Gulf Coast is a Florida

corporation with its principal place of business in Jacksonville, Florida.  (Compl. ¶¶ 1-7.)  Plaintiffs relied on sections 502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974 ("ERISA"), found at 29 U.S.C. §§ 1132(a)(3) and 1145, and sections 301(a) and (c) of the LMRA, found at 29 U.S.C. §§ 185(a) and (c), for subject matter jurisdiction over their claims and personal jurisdiction over Gulf Coast, and asserted venue was proper in this court based on the administration of Plaintiff Trusts, and the processing of union dues checkoff, in Oregon.  (Compl. ¶¶ 9-11.)

Plaintiffs further alleged the existence of the Agreement, the obligation of Gulf Coast to make contributions and report its hours to Plaintiffs  under the Agreement, Gulf Coast's failure to "submit Contribution Report Forms for any month from at least 2009 through the date of this Complaint," Gulf Coast's resulting delinquency, and Gulf Coast's refusal to allow Plaintiffs to audit its records to determine the amounts due.  (Compl. ¶¶ 13-21.)  Plaintiffs then alleged that "[a]s a result of Defendant's failure to make the required contributions and failure to allow an audit to take place, Plaintiffs have been harmed." (Compl. ¶ 23).  Plaintiffs sought an order requiring Gulf Coast to submit its records for an audit and for a judgment in the amount determined to be owing in the audit, plus interest in the amount of one and one-half percent per month on the amount, liquidated damages in the amount of twenty percent on the delinquency, and attorney fees, audit fees, accounting fees, expert fees, and other costs.  (Compl. at 6.)

Gulf Coast moved to the dismiss the Complaint for lack of standing, lack of personal jurisdiction, failure to allege a breach of the Agreement, failure to state a claim under the LMRA, failure to state a claim under ERISA, and failure to exhaust administrative remedies – all nearly identical arguments to those currently pending before the court.  Alternatively, as here, Gulf Coast sought to compel arbitration or for a transfer of venue to Florida.

In a Findings and Recommendation dated November 28, 2011 ("Findings and Recommendation"), this court recommended granting Gulf Coast's motion to dismiss based on findings that Plaintiff Trusts were not the trusts named in the Agreement and, therefore, lacked standing to enforce the Agreement, and that this court did not have person jurisdiction over Gulf Coast on the remaining claim of the Union brought under the LMRA. Neither party filed objections to the Findings and Recommendation. However, Plaintiffs filed a motion to amend the Complaint seeking to remedy the deficiencies identified in the Findings and Recommendation. The proposed amended complaint altered the caption to clarify that Plaintiff Trusts were formerly known as the trusts identified in the Agreement and alleged that the names of the identified trusts were changed by amendment in 2008. (Hays Aff. Attach. 1.) The proposed amended complaint also divided the claims into two counts: one brought by the Union under the LMRA and one brought by Plaintiff Trusts under ERISA. (Hays Aff. Attach. 1.) Finally, the proposed amended complaint addressed the contractual basis for making contributions to Plaintiff Trusts. (Hays Aff. Attach. 1.)

Gulf Coast opposed the motion to amend, arguing that the proposed amendments did not remedy the deficiencies and were futile. For the second time, Gulf Coast argued that Plaintiff Trusts were not parties to the Agreement, the parties were unable to state claims under either the LMRA or ERISA, the court lacked jurisdiction over Gulf Coast, the claims were subject to mandatory arbitration, and the District of Oregon was not the proper venue for this action.

Judge Simon heard oral argument on Plaintiffs' motion to amend on March 7, 2012, and issued an Opinion and Order ("Opinion") the same day granting the motion. Judge Simon explained that the amendments sufficiently allege that the Plaintiff Trusts are those identified in the Agreement and cure both defects identified by this court. (Op. at 4.) Accordingly, Judge Simon vacated the

Findings and Recommendation as moot.  (Op. at 5.)  Judge Simon also opined that Plaintiffs' claims

appear to be subject to the mandatory arbitration clause, but referred consideration of this issued to

this court because the question of mandatory arbitration had not fully briefed in the pleadings before

him.  (Op. at 4.)

　　　　After Plaintiffs filed the Amended Complaint, Gulf Coast moved for a third time to dismiss

Plaintiffs' claims on the same grounds asserted in the initial motion to dismiss and in the opposition

to the motion to amend.  The allegations of the Amended Complaint differ from those in the

Complaint only with regard to the proper identification of Plaintiff Trusts, the separation of

Plaintiffs' claims into two counts, and the increased specificity of the allegations regarding Gulf

Coast's obligations under the Agreement and its failure to perform those obligations.

*Legal Standard*

I.  Motion to Dismiss

　　　　A well-pleaded complaint requires only "a short and plain statement of the claim showing

that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2)(2011).  A federal claimant is not

required to detail all factual allegations; however, the complaint must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level."  *Id.*  While the court must assume that

all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving

party, it need not accept as true any legal conclusion set forth in the complaint.  *Ashcroft v. Iqbal*,

556  U.S. 662, 678 (2009).  Additionally, a plaintiff must set forth a plausible claim for relief – a

possible claim for relief will not do.  "In sum, for a complaint to survive a motion to dismiss, the

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).

## II.  Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") reflects Congress's intent to enforce arbitration agreements within the full reach of the Commerce Clause. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992)(citing *Perry v. Thomas*, 482 U.S. 483, 490 (1987)).   Specifically, section 2 "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable upon such grounds as exist in law or in equity for the revocation of any contract." *Standard Fruit*, 937 F.2d at 475 (citing 9 U.S.C. § 2).

"The court's role under the [FAA] is limited to determining (1) whether a valid agreement exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the agreement is valid and encompasses the dispute, the court must "enforce the agreement in accordance with its terms." *Id*.

"The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).  "[Q]uestions of arbitrability must be determined with a healthy regard for the federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Arbitration of a particular grievance should not be denied "unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986)(citations omitted).

*Discussion*

I.  Motion to Dismiss

    *A.  Plaintiff Trusts*

        1.  Standing

Gulf Coast again argues that Plaintiff Trusts lack standing to enforce the obligations in the Agreement as they are not a party to, or referenced in, the Agreement.  Gulf Coast asserts that because the amendments referenced by Plaintiffs in the Amended Complaint were adopted in 2008, and the Agreement was not signed until 2009, those amendments do not cure the issue identified by this court in the Findings and Recommendation.  If the Agreement was intended to refer to Plaintiff Trusts, the parties would have identified Plaintiff Trusts as they were named in 2009, not as they were identified prior to the amendments in 2008.  Accordingly, Gulf Coast contends that the Amended Complaint and the Agreement are contradictory and the terms of the Agreement should control.

The record shows that Gulf Coast made this same argument to Judge Simon to support its contention that the proposed amendments to the Complaint were futile.  Judge Simon referenced the argument in his Opinion noting that "Defendant argues that the amended complaint does not solve the problems identified in the F&R because the Trusts were renamed in 2008, before the CBA was signed in 2009.  The CBA, thus, should have used the new names, rather than the earlier, 2008 names." (Op. at 4.)  While Judge Simon did not explicitly address the argument in the Opinion, he implicitly rejected it by finding unequivocally that "Plaintiffs proposed amended complaint

sufficiently alleges that the Trusts are the same trusts identified in the CBA." This court must honor the ruling as the law of the case. Accordingly, the court finds that Plaintiff Trusts are those identified in the Agreement.

### 2. Failure to State a Claim under ERISA

Gulf Coast asserts that Plaintiff Trusts are unable to state a claim under ERISA for two reasons: 1) Plaintiff Trusts are not fiduciaries under the Agreement; and 2) Plaintiff Trusts are seeking to enforce the provisions of the Agreement, not an employee benefit plan. The first argument is based primarily on Gulf Coast's continuing argument that Plaintiff Trusts are not the trusts identified in the Agreement. This argument was rejected by Judge Simon who found that the Amended Complaint adequately alleged Plaintiff Trusts are the same trusts identified in the Agreement. Accordingly, the court finds the Amended Complaint adequately alleges Plaintiff Trusts are fiduciaries under the Agreement.

In support of their assertion that this court has subject-matter jurisdiction over Plaintiff Trusts' claims, Plaintiffs state that:

> This court has subject-matter jurisdiction over the Plaintiff Funds' and Plaintiff Trustees' claims by virtue of ERISA Sections 502(a)(3) and 515, 29 U.S.C. §§1132(a)(3) and 1145, in that the Plaintiff Trustees are fiduciaries who seek to enforce provisions of certain Trust Documents establishing the Plaintiff Funds, to which Defendant is bound and pursuant to which Defendant is obligated to contribute to the Plaintiff Funds, as further set forth herein.

(Am. Compl. ¶ 9.) The Trust Documents, as amended, are incorporated into the Agreement. (Am. Compl. ¶ 10.) However, Plaintiff Trusts' claims, as set forth in Count I of the Amended Complaint, are based on Gulf Coast's failure to perform pursuant to the terms of the Agreement, not the Trust Documents. Plaintiffs specifically allege that "[t]he Agreement requires Defendant to pay

contributions at specified hourly rates for each hour worked by each employee covered by the Agreement", and then reference provisions of the Agreement requiring Gulf Coast to "file reports of its hours and to pay contributions by the fifteenth of each month for the previous months work." (Am. Compl. ¶¶ 18, 20.) Plaintiffs further allege that Gulf Coast "is known to have performed craft work, as defined in the Agreement, within the jurisdiction of the Local Union since September 2009, for which contributions should have been paid", Gulf Coast failed to submit the reports or payments required by the Agreement, and an audit is required to determine the amount of the unpaid contributions. (Am. Compl. ¶¶ 25-28.) Finally, Plaintiffs allege that;

> [t]he Plaintiff Funds will suffer immediate, continuing and irreconcilable injury and damage unless Defendant is ordered to specifically perform all of its obligations required under the Agreement and to submit its records to an audit and to pay outstanding contributions due, interest, liquidated damages and other costs as set forth herein, in the Agreement, Trust Documents and ERISA.

(Am. Comp. ¶ 28.)

Plaintiff Trusts represent they are proceeding under 29 U.S.C. §§1132(a)(3) and 1145. 29 U.S.C. § 1132(a)(3) provides that a civil action under ERISA may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain any other appropriate equitable relief (I) to redress such violations or (2) to enforce any provisions of this title or the terms of the plan.

"Plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare plan and an employee pension benefit plan." 29 U.S.C. 1002(3) (2012). 29 U.S.C. § 1145 provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Page 12- FINDINGS AND RECOMMENDATION                    *{SIB}*

While Plaintiff Trusts are clearly seeking to enforce the terms of the Agreement, which does not qualify as a "plan" under ERISA, they are not barred from pursuing their claim under ERISA. The first provision authorizes a plan fiduciary to file a civil action under ERISA to enforce any provision of either a plan or "this title".   Accordingly, Plaintiff Trusts may sue to enforce any provision of ERISA even if they are not seeking to enforce the provisions of a "plan". The second provision creates an action for enforcement of the terms of a collective bargaining agreement requiring contribution to a multiemployer plan.  Clearly, a plaintiff may proceed under this provision without seeking to enforce the terms of a plan.

The Ninth Circuit has held that Section 1145 "creates a cause of action under ERISA for proceeding against an employer who is delinquent in making contributions to a plan." *Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 983 n.4 (9th Cir. 1999).  However, as the section does not create an independent basis for jurisdiction, parties wishing to proceed under Section 1145 must meet the jurisdictional restrictions set forth in Section 1132(e)(1), which requires the action to be brought by a participant, beneficiary, or fiduciary.  *Id*.  In Nor-Cal, the court dismissed the claim brought under Section 1145 by the plaintiff trust funds for lack of subject matter jurisdiction after concluding that the trust funds, as ERISA plans, were not fiduciaries entitled to sue under ERISA. *Id*. at 983-84.

The Ninth Circuit has held that plan trustees are fiduciaries and that naming such trustees as parties to the action is sufficient to establish jurisdiction under 29 U.S.C. § 1132(e)(1).  *Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1065 n.1 (9th Cir. 2001).  Here, the caption of the Amended Complaint indicates that each of Plaintiff Trusts are participating in this action "by and through its Board of Trustees."   (Am. Compl. at 1.)  The

Amended Complaint further alleges that "Plaintiff Board of Trustees" are fiduciaries within the meaning of ERISA and are authorized to maintain this action.  The court finds that these allegations are sufficient to establish that this action is brought by fiduciaries entitled to sue under ERISA on behalf of Plaintiff Trusts and that Plaintiff Trusts have stated a valid claim under ERISA seeking to enforce the contributions provisions of the Agreement.

  *B. The Union*

   1. Personal Jurisdiction over Gulf Coast under the LMRA

  Gulf Coast again argues that this court lacks personal jurisdiction over it with regard to the Union's claim relying, in substantial part, on the finding to that effect in the Findings and Recommendation.  However, the court considered the question in light of its ruling that Plaintiff Trusts did not have standing to pursue an ERISA claim.  Judge Simon has since determined that Plaintiff Trusts are those named in the Agreement and, therefore, do have standing to pursue this action.  Additionally, Judge Simon specifically found that "[b]ecause Plaintiffs allege that the Trusts are administered in Oregon, Plaintiffs may rely on 29 U.S.C. § 1132(e)(2) to establish jurisdiction." (Op. at 4.)  Again, this court must honor this ruling as the law of the case.  Accordingly, the court finds that it has jurisdiction over Gulf Coast with regard to both Plaintiff Trusts' claims under ERISA and the Union's claims under the LMRA.

   2. The Agreement does not meet the LMRA Structural Requirements

  The LMRA contains a prohibition against employers giving money to individuals or organizations acting on behalf it their employees.  29 U.S.C. § 186(a)(2012).  A number of exceptions to this prohibition exist, including payments to trust funds for the sole and exclusive benefit of the employees, provided the payments are made pursuant to a written agreement which

details the basis on which such payments will be made.  29 U.S.C. §186(c)(5).  Gulf Coast argues

that the Agreement does not meet the requirements of the LMRA because it fails to adequately

define who is a covered employee, which "leaves open the questions of whether contributions need

to be made for management, non-union employees, temporary employees, union employees who are

not in good standing, or individuals who specifically reject and want nothing to do with the union."

(Def.'s Mem. in Supp. of Second Mot. to Dismiss at 17.)  More specifically, Gulf Coast asserts that

the Agreement provides different contributions for individuals identified as "key persons" and those

identified as "other than key persons".  While the Agreement does not specifically define the term

"covered employees", the Agreement more than adequately describes the individuals covered by its

terms when viewed as a whole.

First, the Agreement covers all work described in the charter grant issued to the International

Associated of Bridge, Structural, Ornamental and Reinforcing Iron Workers, specifically identified

as:

> (A) Work in connection with field fabrication, handling, racking, sorting, cutting,
> bending, loading and unloading, hoisting, placing, burning, welding and tying of all
> material used to reinforce concrete construction.
>
> (B) Realigning of reinforcing iron, wire mesh placing, bricking, pulling and similar
> reinforcing materials, placing steel dowels as well as refastening and resetting same
> while concrete is being poured.
>
> (C)  Reinforcing steel and wire mesh in roadways and sidewalks in connection with
> building construction.
>
> (D)   The handling or placing of "J" or Jack bars on slip form construction; the
> placing of all clips, bolts and steel rods and wire fabric or mesh pertaining to gunite
> construction; the placing of steel-tex or paper-back mesh used primarily for
> reinforcing and placing wire mesh to reinforce gypsum rod construction.
>
> (E)  Post Tensioning: All loading and unloading, hoisting, placing and tying of all

Page 15- FINDINGS AND RECOMMENDATION                                      *{SIB}*

post tensioning cables.  Also wrecking of cones, wedging of the tendons, stressing, cutting and repairing.

(F)  Any other work related to subparagraphs (A) through (E) above.

(G)  Any work assigned by the Employer and agreed to by the Union on a specific jobsite, although such agreement will have no precedent impact on other jobsites.

(Am. Compl. Ex. 1 at 2.)  Further, Gulf Coast agreed that a union management committee would determine the hourly wage and working conditions of the employees performing this jurisdiction of work.  (Am. Compl. Ex. 1 at 2-3.)  Only those Gulf Coast employees who performed the specific tasks identified in the Agreement are covered by the terms of the Agreement.  *Plumbers & Pipefitters Nat'l Pension Fund v. Eldridge*, 232 Fed. Appx. 680, 682 (9th Cir. 2007)("All employees who performed work covered by the agreement were themselves "covered by" by the agreement.").  Gulf Coast employees who perform only managerial duties and none of the duties described above are not subject to the Agreement.   On the other hand, if a Gulf Coast employee performs both managerial duties and work covered by the Agreement, the employee is covered by the Agreement and Gulf Coast is obligated to contribute to Plaintiff Trusts on his behalf.  *Bd. of Trustees of the Cement Masons and Plasterers Health and Welfare Trust v. Whitewater Eng'g Corp.*, 64 Fed. Appx. 39, 40 (9th Cir. 2003)("We have long adhered to the rule that when an employee splits his working time between a position covered by a collective bargaining agreement and a non-covered position, the employer must contribute for all hours the employee works or is paid.").

Second, the Agreement provides that all Gulf Coast employees covered by the Agreement must be members of, and in good standing with, the Union.  "If the Union notifies [Gulf Coast] that an employee has failed to pay periodic dues and initiation fees uniformly required, the Employer shall be obligated to terminate the employee for such failure."  (Am. Compl. Ex. 1 at 6.)  This

provision defeats Gulf Coast's argument that the lack of a specific definition of covered employee raises issues with regard to the proper treatment of "non-union employees, . . . union employees who are not in good standing, or individuals who specifically reject and want nothing to do with the union." Clearly, none of these employees would remain employed with Gulf Coast and would not be covered by the Agreement once terminated.

Third, the Agreement requires Gulf Coast to make contributions to Plaintiff Trusts "for each hour worked by each employee covered by this Agreement" and gives Gulf Coast the authority to direct its workforce except as expressly limited by the Agreement. (Am. Compl. Ex. 1 at 1, 9.) This provision obligates Gulf Coast to make contributions on behalf of temporary employees for each hour worked and resolves another issue raised by Gulf Coast in support of its argument that the Agreement does not sufficiently define which employees are covered by the Agreement.

Finally, while the Agreement distinguishes between "key persons" and other employees, the only difference between these groups is that employees designated as "key persons" may designate the employee welfare plans of their home local unions, rather than that those of Union, as the trust funds to which Gulf Coast must contribute on their behalf. (Am. Compl. Ex. 1 at 8-9.) Therefore, Gulf Coast remains obligated to make contributions to employee welfare plans on behalf of those employees designated as "key persons",  except in the rare instance where such home trust funds refuse to accept the contributions, at which time the contributions would be added to that key person's take home wages. (Am. Compl. Ex. 1 at 8-9.) Additionally, on at least one occasion, the the Agreement refers to "key persons" as "key employees" establishing that "key persons" are also employees, defeating Gulf Coast's argument that "key employees" could be independent contractors not entitled to contributions. (Am. Compl. Ex. 1 at 8-9.) Furthermore, the Agreement specifically

Page 17- FINDINGS AND RECOMMENDATION                    *{SIB}*

limits Gulf Coast's obligation to make contributions only to the extent they are legal and appropriate under ERISA. (Am. Compl. Ex. 1 at 9.) Because Gulf Coast has the sole discretion to designate employees as "key persons", Gulf Coast should have no problem determining for which key persons and other employees it is obligated to make contributions to Plaintiff Trusts.

The court finds that the Agreement adequately identifies which employees are covered by the Agreement and are entitled to contributions into Plaintiff Trusts. The Agreement complies with the requirements of 29 U.S.C. § 186(c)(5) and is enforceable under the LMRA.

### C. Plaintiffs' Failure to State a Claim

Gulf Coast argues that Plaintiffs fail to allege a claim for breach of the Agreement because the Amended Complaint lacks allegations that contributions are owing or that monthly reports of hours were required by the Agreement. Plaintiffs generally allege that Gulf Coast is a party to the Agreement and that it breached the Agreement by failing to file required reports and make required contributions. With regard to contributions to Plaintiff Trusts, the Amended Complaint specifically states that:

> 18. The Agreement requires Defendant to pay contributions at specified hourly rates for each hour worked by each employee covered by the Agreement.

> * * *

> 23. Prior to the filing of this Complaint, Defendant has paid contributions to the Plaintiff Funds and has submitted required reports, in accordance with the Collective Bargaining Agreement and Trust Documents.

> 24. Defendant has, however, failed to submit reports, or contributions, for any month from at least September 2009 through the date of this Complaint.

> 25. Defendant is known to have performed craft work, as defined in the Agreement, within the jurisdiction of the Local Union since September 2009, for which contributions should have been paid.

26.  Since Defendant has failed to submit reports or payments, the full amount of any delinquency owed to Plaintiff Funds is unknown and cannot be known without an audit of Defendant's records.

27.  As a result of Defendant's failure to make the required contributions, the Plaintiff Funds have been harmed.

(Am. Compl. ¶¶ 18, 23-27.)  With regard to check-off items due the Union, the Amended Complaint

similarly states that:

30.  The Agreement requires Defendant to check-off dues and working assessments and to forward them to the Union.

31.  The Agreement requires Defendant to remit such check-off amounts to the Union, along with a list of covered employees, by the fifteenth of each month.

32.  The Plaintiff Funds are the authorized collection agent under the Collective Bargaining Agreement and related Trust Documents for contributions and deductions required under the Collective Bargaining Agreement . . . .

33.  In the past, Defendant has paid contributions to the Plaintiff Funds and has submitted required reports.

34.  Defendant has, however, failed to remit payment of any check-off amounts for any month from at least September 2009 through the date of this Complaint.

35.  Defendant is known to have performed craft work, as defined in the Agreement, within the jurisdiction of the Local Union since September 2009, for which contributions should have been paid.

36.  Since Defendant has failed to submit reports or payments, the full amount of any delinquency owed to Plaintiff Funds is unknown and cannot be known without an audit of Defendant's records.

37.  As a result of Defendant's failure to make the required contributions, the Local Unions has been harmed.

(Am. Compl. at ¶¶ 30-37. )  The Agreement requires Gulf Coast to make contributions to employee

welfare funds, remit check-off dues and working assessments owed the Union, and provide a list of

employees covered, on or before the fifteenth of each month.   (Am. Compl. Ex. 1 at 9-11.)

Page 19- FINDINGS AND RECOMMENDATION                                    *{SIB}*

Gulf Coast is correct that the Agreement does not require it to file reports of its hours. However, the Agreement does specifically provide that Gulf Coast must file a list of employees covered by the Agreement on a monthly basis. Accordingly, Plaintiffs allegations that Gulf Coast is obligated by the Agreement to file reports, that Gulf Coast has filed reports in the past, and that Gulf Coast has failed to file reports since September 2009 are sufficient to state a claim for breach of the Agreement.

Gulf Coast's argument that Plaintiffs have failed to allege anything more than the possibility of loss of contributions is equally unavailing. Plaintiffs allege that Gulf Coast is known to have performed craft work as defined in the Agreement since September 2009. Viewing this factual allegation as true and in a light most favorable to Plaintiffs, as the court must, it is evident that Plaintiff has sufficiently alleged, even though somewhat passively, that Gulf Coast has performed work covered by the Agreement since September 2009. Assuming that Gulf Coast has performed such work, Plaintiffs' additional allegations that Gulf Coast was obligated under the Agreement to make payments to Plaintiff Trusts for its employees and failed to do so in a timely manner sufficiently allege breach of the Agreement. The fact that Plaintiffs are unable to allege the specific amount of the delinquency does not defeat their claim. Plaintiffs have adequately alleged a breach of the Agreement and injuries resulting from the breach. The total amount of such injuries may be determined after the parties engage in appropriate discovery.

Plaintiff Trusts have standing to pursue this action and have stated a valid claim under ERISA. This court has personal jurisdiction over Gulf Coast for all Plaintiffs under ERISA and the Agreement meets the structural requirement of the LMRA. Finally, Plaintiffs have alleged facts sufficient to support viable claims for breach of the Agreement. Gulf Coast's motion to dismiss the

Amended Complaint should be denied.

II.  Motion to Compel Arbitration

In the event the Plaintiffs' claim survived the motion to dismiss, Gulf Coast alternatively argues that the claims are subject to mandatory arbitration under the Agreement.  The Agreement specifically provides a three-step process to resolve "[a]ny question arising out of this Agreement involving its interpretation or application, excluding trades jurisdictional disputes."  (Am. Compl Ex. 1 at 5.)   The first two steps involve attempts between the employee, or the Union on the employee's behalf, and Gulf Coast to informally resolve the dispute.  If the first two steps are not successful, the  dispute must then be submitted "to arbitration for a binding decision."

There is no dispute that the Agreement, and the arbitration provision contained therein, is valid and enforceable.  Accordingly, the court's only task is to determine whether the claims asserted herein involve the interpretation or application of the Agreement.  They clearly do.  Plaintiffs are attempting to enforce the terms of the Agreement.  Gulf Coast's arguments in support of its motion to dismiss raise issues regarding which trusts, which employees, and which reports, are covered by the Agreement.  These issues are likely to be raised at the summary judgment or trial level as well. Virtually every allegation in the Amended Complaint relies on, or refers to, provisions in the Agreement.  Additionally, Judge Simon commented in his Opinion that the claims appear to be subject to mandatory arbitration, but stopped short of compelling arbitration based on the absence of adequate briefing on the issues at that time.

The court finds that the claims alleged by Plaintiffs in the Amended Complaint require interpretation or application of the Agreement. Accordingly, the claims are subject to the mandatory arbitration provisions of the Agreement provided the party asserting the claim is bound by the

provisions of the Agreement.  The Union, as a signatory to the Agreement, is clearly bound by the arbitration provisions.  *Int'l Union of Painter and Allied Trades Dist. 15, Local 159 v. J & R Flooring, Inc.*, 656 F.3d 860, 868 (9th Cir. 2011)(signatories to a collective bargaining agreement are bound by the arbitration provisions found therein with regard to action brought under the LMRA to enforce the terms of the collective bargaining agreement).  Accordingly, the court finds that the Union's claim against Gulf Coast brought under the LMRA to enforce the Agreement is subject to the arbitration clause in the Agreement and that Gulf Coast's motion to compel arbitration of the Union's claim should be granted.   The trickier issue is whether Plaintiff Trusts are bound by the Agreement with regard to their claims under ERISA.

The question of whether trustees of multiemployer trust funds seeking to recover contributions due them under a collective bargaining agreement must first submit the dispute to arbitration pursuant to the terms of such agreement is addressed and answered in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984).  The Supreme Court first found that the presumption in favor of arbitrability generally applied in labor disputes between a union and employer "is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreement."  *Id*. at 372.  In the absence of the presumption, the Court looked to the specific language of both the trust documents and the collective-bargaining agreement and found that none of these documents required arbitration of the dispute between the trustees and the employers over contributions to the trust funds.  Specifically, the trust documents gave the trustees broad authority to initiate any legal proceedings they deemed necessary to collect or preserve contributions to the trusts and did not in any way condition that

authority on exhausting contractual remedies found in the collective-bargaining agreement.  *Id*. at 373.  The collective-bargaining agreements limited the arbitration requirement "to differences that arise between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of the agreement" and did not contain language suggesting that the disputes between the trustees and the employers were also subject to arbitration.  *Id*. at 374.   The court rejected the employer's argument that the court should infer that the parties intended the trustees to rely on the Union to arbitrate their disputes with the employer under the collective-bargaining agreement, based on the possible conflict of interest between the Union and the trusts and the absence of a duty of fair representation from the Union to the trustees.  *Id*. at 375-76.  Accordingly, the Court concluded that the trustees claims were not subject to arbitration.  *Id*. at 376.  The Ninth Circuit has followed *Schneider* on at least two occasions.  *See U.A. Local 342 Apprenticeship & Training Trust v. Babcock & Wilcox Constr. Co.*, 396 F.3d 1056, 1059 (9th Cir. 2005)(trust fund not obligated by arbitration provisions where language of collective bargaining agreement did not evidence such intent); *Carpenters Health and Welfare Trust Fund for Cal. v. Bla-Delco Constr., Inc.*, 8 F.3d 1365, 1369 (9th Cir. 1993)(where trust funds were not parties to collective bargaining agreement and neither collective bargaining agreement or trust documents expressly bound trust funds to arbitration,  trust funds not required to arbitrate collection dispute).

There is no dispute that Plaintiff Trusts are not signatories to the Agreement.  The arbitration provision in the Agreement requires a "employee or the Union" to notify Gulf Coast of any violation of the Agreement and attempt to resolve the dispute informally.  If such informal attempts are unsuccessful, the "Employer and the Union" shall select an arbitrator who will make a decision binding the parties.  Only an employee or the Union may initiate a grievance and only Gulf Coast

and the Union may participate in the arbitration.  Plaintiff Trusts are not mentioned in the arbitration provisions and the section establishing Gulf Coast's obligation to contribute to Plaintiff Trusts does not require, or even mention, an obligation to arbitrate disputes relating to such contributions.  The language of the Agreement does not establish an intent to require arbitration of disputes between Plaintiff Trusts and Gulf Coast.   The court finds that Plaintiff Trusts are not obligated to arbitrate their claims for contributions due under the Agreement.  Gulf Coast's motion to compel arbitration of Plaintiff Trust's ERISA claims should be denied.

While the court recommends denial of the motion to compel arbitration with regard to Plaintiff Trust's claim, it does recommend staying those claims pending arbitration of the Union's claims.  The claims raised by Plaintiff Trusts require construction of the Agreement and are factually similar to the claims asserted by the Union, which the court has recommended be addressed through arbitration.  "A trial court can stay any statutory claim that arises out of substantially the same facts present in an ongoing administrative or arbitral proceeding."  *Amaro v. Cont'l Can Co.*, 724 F.2d 747 (9th Cir. 1984)(stay of statutory ERISA claim pending final arbitration ruling on union's claim alleging violations of collective bargaining agreement).  It is likely that some, if not all, of the issues raised by Plaintiff Trusts will be addressed and resolved in the arbitration of the Union's claims.  Those not decided may be subsequently considered by this court with proper weight given to the arbitrator's decision.

III.  Motion to Transfer Venue

Gulf Coast moves to transfer this action to the Middle District of Florida based on inconvenience of the parties under FED. R. CIV. P. 12(b)(3).  In light of the court's recommendation that the Union's claim be arbitrated and Plaintiff Trust's claims be stayed pending such arbitration,

the parties will not suffer any inconvenience from this action remaining in this court during the pendency of the arbitration proceedings. At such time as the arbitration proceeding is complete and Plaintiff Trusts move to lift the stay to proceed on their ERISA claims, the court may address any motion to transfer venue filed by Gulf Coast at that time. Consequently, the court recommends denying Gulf Coast's motion to transfer venue as moot in light of the recommended stay but allowing Gulf Coast to refile such motion, if desired, once the stay is lifted.

*Conclusion*

Gulf Coast's motion (#39) to dismiss should be DENIED; Gulf Coast's alternative motion to compel arbitration should be GRANTED with regard to the Union's claims and DENIED with regard to Plaintiffs Trusts' claims, however, Plaintiff Trust's claims should be STAYED pending arbitration of the Union's claims; and Gulf Coast's alternative motion to transfer venue should be DENIED as moot with leave to refile once the stay of Plaintiff Trusts' claims is lifted.

<u>Scheduling Order</u>

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **September 14, 2012**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of August, 2012.


                                        _____/s/ John V. Acosta_____
                                            JOHN V. ACOSTA
                                        United States Magistrate Judge

*{SIB}*