UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

REGIONAL LOCAL UNION NO. 846,
International Association of Bridge
Structural, Ornamental and Reinforcing
Iron Workers, AFL-CIO, by and through
LUIS QUINTANA, in his representative
capacity as Business Manager; and
REGIONAL DISTRICT COUNCIL
WELFARE PLAN AND TRUST, f/k/a
LOCAL 846 REBAR WELFARE TRUST,
by and through its Board of Trustees;
and REGIONAL DISTRICT COUNCIL
RETIREMENT PLAN AND TRUST,
f/k/a REBAR RETIREMENT PLAN
AND TRUST; by and through its Board
of Trustees; and REGIONAL DISTRICT
COUNCIL TRAINING TRUST, f/k/a
LOCAL 846 TRAINING TRUST; by and
through its Board of Trustees; and
REGIONAL DISTRICT COUNCIL
VACATION TRUST FUND, f/k/a

Case No.: 3:11-CV-658-AC

FINDINGS AND
RECOMMENDATION

Page 1- FINDINGS AND RECOMMENDATION                                          *{SIB}*

LOCAL 846 VACATION TRUST, by
and through its Board of Trustees;

                    Plaintiffs,

      v.

GULF COAST REBAR, INC., a Florida
corporation, f/k/a GULF COAST
PLACERS, INC., a Florida corporation,

                    Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

       Plaintiffs Regional Local Union No. 846 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO (the "Union"), and the Regional District Council Welfare Trust, the Regional District Council Pension Trust, the Regional District Council Training Trust, and the Regional District Council Vacation Trust (collectively "Plaintiff Trusts), filed this action to recover amounts allegedly due them from defendant Gulf Coast Rebar, Inc., ("Gulf Coast") pursuant to the terms of a collective bargaining agreement entered into between the Union and Gulf Coast on March 13, 2009 (the "Agreement"). On October 22, 2012, this court granted Gulf Coast's motion to compel arbitration of the Union's claim brought under § 301 of the Labor Management Relations Act of 1947 (29 U.S.C. §§ 141-197) (the "LMRA"), and stayed the Plaintiff Trusts' claims brought under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001-1114) ( the "ERISA"). On April 9, 2014, the arbitrator issued a decision in favor of the Union (the "Award"). Presently before the court are Gulf Coast's motion to vacate the Award and the Union's motion to confirm and enforce the Award.

The court finds that under the standard of review applicable to either the LMRA or the Federal Arbitration Act (9 U.S.C §§ 1-16) (the "Act"), and in light of the extreme deference owed the Award under both acts, the Award did not violate the essence of the Agreement, was not in manifest disregard of the law, and specifically addressed the procedural arbitrability issues. Accordingly, the court should confirm the Award.

*Background*

The Agreement provides for the establishment of four jointly-administered fringe benefit plans to be named: (1) the Rebar Retirement Plan and Trust; (2) the Local 846 Rebar Welfare Trust; (3) the Local 846 Vacation Trust; and (4) the Local 846 Training Trust. (Am. Compl. Ex. 1 at 8.) Gulf Coast agreed to be bound by the terms of each of these trusts and to make timely payments into the trusts in the amounts set forth in "Appendix A" for employees covered by the Agreement. (Am. Compl. Ex. 1 at 8-9.) Gulf Coast also agreed to make contributions to "home local pension, health and welfare, annuity, vacation and other welfare benefit funds" in accordance with the home trust funds' rules and at the customary rates set by the home trust funds on behalf of "all key employees who designate home Local Unions other than the signatory Local Union"; to "check-off" from the wages of employees who voluntarily authorize such deductions for union dues, working assessments, and standard initiation fees; and to remit such amounts "checked-off" to the participating unions on or before the 15th day of each month, together with a list of the employees covered by the payment. (Am. Compl. Ex. 1 at 9-10.)

The Agreement incorporated the terms of the various trust and plan documents, as they currently existed and may be amended from time to time, and required payment to the fringe benefit funds by the 15th day of the month following the month in which work was performed. (Am.

Compl. Ex. 1 at 9.)  Failure to make such payment would "result in the accrual of interest at a rate of one and one-half percent (1½ %)  per month for unpaid balances, plus such accounting fees, attorneys fees, auditing fees, and other expert fees as are necessary if litigation is filed to collect said delinquent amounts."  (Am. Compl. Ex. 1 at 9.)  Additionally, failure to pay all contributions and file all reports by the 15th of the month following the month in which the work was performed allowed the unions to engage in a work stoppage, strike or other legal economic activity, as well as pursue the grievance procedure set forth in the Agreement, after five days' notice to Gulf Coast. (Am. Compl. Ex. 1 at 9-10.)

The Agreement created a three-step grievance process to resolve "[a]ny question arising out of this Agreement involving its interpretation or application, excluding trades jurisdictional disputes."  (Am. Compl. Ex. 1 at 5.)

Step 1.   When any employee or the Union subject to the provisions of this Agreement believes a violation of this Agreement has occurred, acting through the Local Union steward, within three (3) working days after the occurrence or non-occurrence giving rise to the dispute, said employee or the Union shall give notice to the Employer stating the section alleged to have been violated.  Failure to raise any dispute within three (3) working days of the occurrence or non-occurrence shall constitute a waiver of the right asserted by the employee.  The dispute shall be discussed by the aggrieved employee with the steward and the Employer's representative at the construction site.  If the dispute is not settled within twenty-four (24) hours, Step 2 of the Grievance Procedure may be pursued no later than two (2) working days thereafter.

Step Two.   The employee, the local business representative of the Union and a representative of the Employer shall meet within ten (10) working days after timely notice of proceeding to Step 2 has been made and endeavor to adjust the matter.  At this point the grievance shall be submitted in writing by the business representative of the Local Union to the Employer.  If agreement cannot be reached after the meeting between these parties, the matter shall be referred to Step 3 of this Grievance Procedure within three (3) working days thereafter.

Step Three.   Failure under Step 2 to reach a decision shall constitute a basis

for submittal of the dispute to arbitration for a binding decision.  Unless the
Employer and the Union can otherwise select an impartial Arbitrator, the Employer
and the Union shall choose an Arbitrator from a panel of seven (7) requested from
the Federal Mediation and Conciliation Service by alternatively striking a name from
the panel until only one arbitrator remains.  Costs of the Arbitrator shall be borne
equally by the Union and the Employer.  The decision of the Arbitrator shall be
binding upon all parties.

(Am. Compl. Ex. 1 at 5.)  The time limits identified in the steps could be extended by mutual

agreement of the parties and failure to process a grievance in a timely manner would be deemed a

waiver of the grievance.  (Am. Compl. Ex. 1 at 5.)

On May 31, 2011, the Union and Plaintiff Trusts (collectively "Plaintiffs") filed a complaint

naming Gulf Coast as defendant seeking to recover contributions and dues allegedly owed them

under the Agreement (the "Complaint").    In the Complaint, Plaintiffs alleged the Union is a

"voluntary unincorporated association existing pursuant to the laws of the State of Florida," the

William C. Earhart Company of Portland, Oregon, administers Plaintiff Trusts and "processes union

dues checkoff," and Gulf Coast is a Florida corporation with its principal place of business in

Jacksonville, Florida.  (Compl. ¶¶ 1-7.)  Plaintiffs relied on sections 502(a)(3) and 515 of the ERISA,

found at 29 U.S.C. §§ 1132(a)(3) and 1145, and sections 301(a) and (c) of the LMRA, found at 29

U.S.C. §§ 185(a) and (c), for subject matter jurisdiction over their claims and personal jurisdiction

over Gulf Coast, and asserted venue was proper in this court based on the administration of Plaintiff

Trusts, and the processing of union dues checkoff, in Oregon.  (Compl. ¶¶ 9-11.)

Plaintiffs further alleged the existence of the Agreement, the obligation of Gulf Coast to

make contributions and report its hours to Plaintiffs under the Agreement, Gulf Coast's failure to

"submit Contribution Report Forms for any month from at least 2009 through the date of this

Complaint," Gulf Coast's resulting delinquency, and Gulf Coast's refusal to allow Plaintiffs to audit

its records to determine the amounts due.  (Compl. ¶¶ 13-21.)  Plaintiffs then alleged that "[a]s a result of Defendant's failure to make the required contributions and failure to allow an audit to take place, Plaintiffs have been harmed."  (Compl. ¶ 23.)  Plaintiffs sought an order requiring Gulf Coast to submit its records for an audit and for a judgment in the amount determined to be owing in the audit, plus interest in the amount of one and one-half percent per month on the amount, liquidated damages in the amount of twenty percent on the delinquency, and attorney fees, audit fees, accounting fees, expert fees, and other costs.  (Compl. at 6.)

Gulf Coast moved to the dismiss the Complaint for lack of standing, lack of personal jurisdiction, failure to allege a breach of the Agreement, failure to state a claim under the LMRA, failure to state a claim under the ERISA, and failure to exhaust administrative remedies.  Alternatively, Gulf Coast sought to compel arbitration or for a transfer of venue to Florida.

In a findings and recommendation dated November 28, 2011 ("Findings and Recommendation"), this court recommended granting Gulf Coast's motion to dismiss based on findings that Plaintiff Trusts were not the trusts named in the Agreement and, therefore, lacked standing to enforce the Agreement, and that this court did not have person jurisdiction over Gulf Coast on the remaining claim of the Union brought under the LMRA.  Neither party filed objections to the Findings and Recommendation.  However, Plaintiffs filed a motion to amend the Complaint seeking to remedy the deficiencies identified in the Findings and Recommendation.  The proposed amended complaint altered the caption to clarify that Plaintiff Trusts were formerly known as the trusts identified in the Agreement and alleged that the names of the identified trusts were changed by amendment in 2008.  (Hays Aff. Attach. 1.)  The proposed amended complaint also divided the claims into two counts:  Count I brought by Plaintiff Trusts under the ERISA for contributions and

Page 6- FINDINGS AND RECOMMENDATION                                    {SIB}

Count II brought by the Union under the LMRA for check-off dues and working assessments. (Hays Aff. Attach. 1.) Finally, the proposed amended complaint addressed the contractual basis for making contributions to Plaintiff Trusts. (Hays Aff. Attach. 1.)

Gulf Coast opposed the motion to amend, arguing the proposed amendments did not remedy the deficiencies and were futile. For the second time, Gulf Coast argued Plaintiff Trusts were not parties to the Agreement, the parties were unable to state claims under either the LMRA or the ERISA, the court lacked jurisdiction over Gulf Coast, the claims were subject to mandatory arbitration, and the District of Oregon was not the proper venue for this action.

Judge Simon heard oral argument on Plaintiffs' motion to amend on March 7, 2012, and issued an opinion and order ("Opinion") the same day granting the motion. Judge Simon explained the amendments sufficiently alleged the Plaintiff Trusts are those identified in the Agreement and cured both defects identified by this court. Accordingly, Judge Simon vacated the Findings and Recommendation as moot. Judge Simon also opined the Union's claims appeared to be subject to mandatory arbitration under the terms of the Agreement. Judge Simon implicitly rejected the Union's assertion that § 185 of the LMRA allows them to bring this action for violations of the Agreement explaining where:

> a statute is "silent on whether claims . . . can proceed in an arbitrable forum, the [Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*] requires the arbitration agreement to be enforced according to its terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. ___, 132 S.Ct. 665, 673 (2012). Because the LMRA is silent with respect to arbitration, Regional's claim appears to be subject to the mandatory arbitration provision in the CBA."

(Op. at 4-5.) As the question of mandatory arbitration had not been fully briefed in the pleadings before him, Judge Simon referred consideration of this issue to this court.

Page 7- FINDINGS AND RECOMMENDATION                                    *{SIB}*

Plaintiffs filed the First Amended Complaint on March 20, 2012 (the "Amended Complaint"). Gulf Coast moved for a third time to dismiss Plaintiffs' claims on the same grounds asserted in the initial motion to dismiss and in the opposition to the motion to amend. The allegations of the Amended Complaint differed from those in the Complaint only with regard to the proper identification of Plaintiff Trusts, the separation of Plaintiffs' claims into two counts, and the increased specificity of the allegations regarding Gulf Coast's obligations under the Agreement and its failure to perform those obligations. In a findings and recommendation filed August 30, 2012 ("Second Findings and Recommendation"), this court recommended denying Gulf Coast's motion to dismiss, deferring to Judge Simon's ruling that the Amended Complaint sufficiently alleges Plaintiff Trusts are those identified in the Agreement and Plaintiff Trusts have standing to pursue a claim under the ERISA. Additionally, this court found Plaintiff Trusts stated a viable claim under the ERISA as fiduciaries seeking to enforce the contribution provisions of the Agreement.[1] Judge Simon adopted these specific findings and recommendations in an opinion and order filed October 22, 2012 ("Second Opinion").[2] *Regional Local Union No. 846 v. Gulf Coast Rebar*, No. 3:11-cv-658-AC, 2012 WL 5208485, *3 (D. Or. Oct. 22, 2012).

Gulf Coast alternatively moved to refer Plaintiff's claims to arbitration based on the terms

---

[1]This court also found the Agreement met the requirements of, and was enforceable under, the LMRA, and that the Union had stated a viable claim against Gulf Coast under the LMRA.

[2]Judge Simon declined to adopt the portion of the Second Findings and Recommendation addressing the viability of the Union's claims under the LMRA "not because they are incorrect" but "because they concern the interpretation and application of the [Agreement]." *Local 846*, 2012 WL 5208485 at *3. Judge Simon explained that once a court has determined a dispute is properly submitted to arbitration, it should not make "findings about the interpretation and application of the [Agreement] before the arbitration is complete." *Id*.

of the Agreement.[3]  Apparently following Judge Simon's lead, and likely in light of the existence

of claims under both the LMRA and the ERISA, Gulf Coast relied on the provisions of, and cases

interpreting, the Act.  Plaintiffs opposed arbitration of Plaintiff Trusts' claims, arguing Plaintiff

Trusts were not parties to the Agreement and, therefore, not bound by the arbitration provisions

therein.  Plaintiffs also opposed referral of the Union's claim to arbitration noting that such claim

alleged a breach of the Agreement, not one involving interpretation or application of the Agreement.

Plaintiffs referenced, but did not discuss in detail, cases addressing arbitration under the LMRA.

     In the Second Findings and Recommendation, this court found Plaintiffs' claims involved

interpretation or application of the Agreement and the Union's claim was subject to the mandatory

arbitration provisions of the Agreement but that Plaintiff Trusts, who were not signatories to the

Agreement and not mentioned in the arbitration provisions, were not obligated to arbitrate their

claims for contributions due under the Agreement.  This court recommended Gulf Coast's motion

to compel arbitration be granted solely with regard to the Union's claims and Plaintiff Trusts' claims

be stayed pending arbitration of the Union's claims.  Judge Simon adopted this recommendation

based on legislative and judicial polices favoring arbitration, as identified by the Supreme Court in

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960) and *Gateway

Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 377 (1974), and the absence of any objection

to this portion of the Second Findings and Recommendation.  *Local 846*,  2012 WL 5208485, at *2.

     In accordance with Judge Simon's ruling, the parties initiated arbitration proceedings before

William P. Hobgood ("Hobgood").  On June 21, 2013, Gulf Coast moved to dismiss the LMRA

---

[3]Gulf Coast also filed an alternative motion to transfer venue which the court dismissed as moot in light of the referral of the Union's claim to arbitration and resulting stay of the Plaintiff Trusts' claims.

claim alleged in Count II of the Amended Complaint on four grounds: "(1) failure to state a claim upon which relief can be granted; (2) lack of personal jurisdiction over Defendant; (3) the CBA's failure to meet the statutory requirements of the . . . LMRA; and (4) Plaintiff's failure to comply with the CBA's procedural grievance requirements, thereby waiving the right to relief." (Def.'s Mot. to Vacate Arbitration Award (Def.'s Mot.") Ex. 2 at 2, 8.) At Hobgood's request, Gulf Coast submitted a memorandum addressing Hobgood's authority to dismiss the action prior to a hearing on September 17, 2013. (Def.'s Mot. Ex. 2 at 2.) It appears the motion to dismiss was either denied or not addressed by Hobgood. On December 3, 2013, Gulf Coast filed a position statement asserting the Union failed to timely process a grievance or demand arbitration under the terms of the Agreement and, therefore, waived any right to the relief it now seeks. (Def.'s Mot. Ex. 3.)

Hobgood presided over the arbitration hearing on January 7, 2014. At the outset, the parties disagreed on the issue to be decided by Hobgood. The Union phrased the issue to be "whether [Gulf Coast] violated the [Agreement] by failing to remit dues and working assessments through the dues check-off provision and, if so, what remedy is appropriate." (Def.'s Mot. Ex. 4 at 5.) Gulf Coast disagreed and indicated the issue "is Count II in the [Amended Complaint] as ordered by the District Court judge for the District of Oregon in Case 11-658." (Def.'s Mot. Ex. 4 at 5.) The parties subsequently agreed to let Hobgood phrase the issue. (Def.'s Mot. Ex. 4 at 5.)

At the hearing, as set forth below, the Union representative admitted he did not utilize the grievance procedure provided in the Agreement prior to filing the present action and the parties argued the effect of this failure.

> Q. [MR. MORGADO] This is a grievance procedure, Article 9 here. Well, have you seen this provision before?

A. [DANIEL "STEVE" PARKER]  Oh, yes.

Q. Did you follow these steps, steps 1, 2, and 3, when you realized that contributions were not being made by Gulf Coast Rebar?

A. No, I did not.

Q. Why did you not do that?

A. I don't think it is relevant.
Q. Why would you say it's not relevant?

A. Well, we are dealing with – the way I see grievance procedure, most of the time when you have an ironworker rod buster on the job between a labor management – I have not used this procedure for fringe.

> MR. EVANS: I'm going to also interject here, Mr. Arbitrator, the company is the one who requested that we arbitrate this matter. We filed suit in Oregon.  If you look at this Step 1 in the grievance procedure, meeting on the job site.  Step 2 is a subsequent meeting. Step 3 is arbitration.

> You don't get to arbitration unless you do 1 and 2.  And by moving to compel arbitration, they have waived any right to say that the grievance procedure has not been complied with.

> THE ARBITRATOR:  I assume that is going to be your argument.

> MR. EVANS:  Absolutely.

> MR. MORGADO:  I would violently object to that, frankly. Here is a copy of our position statement on it for you.

> For the arbitrator, our position statement can be found at Tab 18 of your binder, Mr. Arbitrator.

> The point being here that there were, I believe, 400 or 623 days in between the time that Gulf Coast Rebar supposedly stopped paying contributions and the time they filed their first lawsuit and that the case law is very clear –

> THE ARBITRATOR:  They, the Union filed?

MR. MORGADO:  The Union, right.

And Mr. Parker has testified that he did not follow this procedure.  And I have submitted a short position statement, just three or four pages there, that, frankly, this ends the arbitration right now.

You can review it when you are ready to review it.  There is no waiver when a company compels arbitration 400 or something days later, when the Union should have followed this grievance.

In other words, the real pattern is the Union was untimely, by over year, in dealing with this issue.

We compelled arbitration because we understand that they should have done this a long time ago.  We want this provision enforced.

MR. EVANS:  They have already stipulated.  The matter's properly before you.

MR. MORGADO:  We haven't stipulated to that.

MR. EVANS: Yes, you did.

MR. MORGADO:  No, we did not.

MR. EVANS:  This was a chain of emails from James Kimmey –

MR. MORGADO:  You will see a response not from me not stipulating to it.

MR. EVANS:  Can I see it?

THE ARBITRATOR:  Excuse me, Gentleman, direct your arguments to me, if you are going to.

I understand your position, and I understand the company's position on this particular aspect of it.  We will make some arguments.

You are saying it was untimely?

    MR. MORGADO:  Yes.  Correct.

    MR. EVANS:  I'm saying they compelled arbitration, that they agreed to come here today, that they shouldn't agree to come here today because you don't get to arbitration unless the first two steps of the agreement are complied with.

    MR. MORGADO:  So that's the point.

    MR. EVANS:  It wouldn't be –

    MR. MORGADO:  You waived your rights.  You should have made that argument in court.  You didn't make it clear.

    THE ARBITRATOR:  Gentleman, please.  I understand your arguments.  You can proceed from here.

(Def.'s Mot. Ex. 4 at 85-88.)

At the conclusion of the hearing, Hobgood allowed the parties to submit post-arbitration statements and confirmed both parties felt "they have had a complete opportunity to present their cases, to examine and cross-examine witnesses, and that the proceedings have met their view of a fair process." (Def.'s Mot. Ex. 4 at 191-92.)  In its post-arbitration statement, Gulf Coast again argued the Union's failure to timely pursue a grievance waived any right to relief under the Agreement.  (Def.'s Mot. Ex. 5 at 1-3.)

Hobgood issued the Award on April 9, 2014, sustaining the Union's grievance.  (Def.'s Mot. Ex. 6.)  Hobson phrased the issue as follows: "Did [Gulf Coast] violate ARTICLE XVII <u>FRINGE BENEFIT FUNDS</u>, ARTICLE XVIII <u>IMPACT</u> and ARTICLE XIX <u>DUES CHECK-OFF</u> of the [Agreement] between the [Union] and [Gulf Coast]?  If so, what is the appropriate remedy?" (Def.'s Mot. Ex. 6 at 4.)  Hobson rejected Gulf Coast's asserted defenses, and found Gulf Coast had engaged in rebar work covered by the Agreement and "may have incurred financial obligations to

Page 13- FINDINGS AND RECOMMENDATION       *{SIB}*

the Union's funds." (Def.'s Mot. Ex. 6 at 10-11.) He directed Gulf Coast to "submit to an audit to determine all dues and assessments owed from the periods August 2009 to the present." (Def.'s Mot. Ex. 6 at 11.)

In the Award, Hobson acknowledged and summarized the parties' positions on Gulf Coast's waiver argument. He stated Gulf Coast's position was that:

> contrary to the [Agreement], the Union failed to exhaust its administrative remedies and waited over 600 days to process its claim. Accordingly, the Union has failed to follow the [Agreement's] three step grievance procedure, has failed to meet the grievance procedure time limits, did not seek an extension of these time limits and has essentially waived the grievance.

(Def.'s Mot. Ex. 6 at 8.) He then summarized the Union's position on waiver, noting:

> the Union argues that [Gulf Coast], by demanding arbitration of this matter has waived its arbitrability argument. [Gulf Coast], in the Oregon District Court, moved to compel arbitration of this matter. [Gulf Coast's] request was granted by the Court. Further, [Gulf Coast] admitted that the matter is properly before the arbitrator for a final and binding determination on the merits.

(Def.'s Mot. Ex. 6 at 8.) Hobson then addressed the issue as follows:

> It is uncontested that [Gulf Coast] requested the Federal District Court of Oregon order arbitration in this matter. It is also clear from the record that the Court granted [Gulf Coast's] request. [Gulf Coast's] request for arbitration and participation in this arbitration is an acknowledgment by [Gulf Coast] that this matter is properly before the arbitrator for a decision on its merits under the [Agreement]. Accordingly, [Gulf Coast's] four arguments will be considered in this context.

> **Timeliness**

> [Gulf Coast's] argument that the Union failed to exhaust its administrative remedies provided in the [Agreement] is without merit. [Gulf Coast's] request for arbitration was granted by the court and effectively waived any contractual time limits on this issue.

(Def.'s Mot. Ex. 6 at 9.)

Gulf Coast moves for vacation of the Award under the Act arguing Hobgood did not properly

consider the effect of the Union's failure to comply with the grievance process. Gulf Coast argues the Award "entirely failed to draw its essence from either the [Agreement] or the Court's order compelling arbitration" and Hobgood "exceeded the scope of his authority." (Def.'s Mot. at 5.) The Union contends the Act does not apply in this context and the Award must be confirmed under the standards relevant to labor arbitrations.

*Legal Standard*

The parties disagree on the legal standard applicable to the review of the Award. Gulf Coast asserts the Act governs the review of the Award while the Union argues "the Ninth Circuit has held that the FAA does not apply to labor arbitrations." (Mem. in Supp. of Pl.'s Mot. to Confirm Arbitration Award ("Pl.'s Mem.") at 5.) The Union asserts the LMRA controls and the Award must reviewed under principles applicable to labor arbitrations.

Gulf Coast argues that because the court compelled arbitration pursuant to the Act, preventing the court from reviewing the Award under the Act would be absurd. The court did consider Gulf Coast's motion to refer Plaintiff Trusts' claims to arbitration under the Act and determined that the claims were not arbitrable. However, with regard to the Union's claims, the court merely determined that the Union, as a signatory to the Agreement, was bound by the arbitration provisions.[4] Consequently, the Union's claim under the LMRA to enforce the Agreement was subject to the Agreement's arbitration provision. The court did not specifically rely on the terms of the Act in so holding. Also, in adopting the Second Findings and Recommendation, Judge Simon referenced two cases in which the Supreme Court relied on the LMRA, not the Act, in finding the

---

[4]The court also addressed whether the Agreement met the LMRA structural requirements. However, Judge Simon specifically rejected this discussion in the order adopting the Second Findings and Recommendation.

parties were obligated to arbitrate a grievance under the terms of a collective bargaining agreement. *Warrior & Gulf*, 363 U.S. at 577 ("[A] grievance arbitration provision in a collective bargaining agreement could be enforced by reason of § 301(a) of the Labor Management Relations Act. . . . "); *Gateway Coal*, 414 U.S. at 377 ("The federal policy favoring arbitration of labor disputes is firmly grounded in congressional command" found in LMRA.)  Accordingly, neither this court, nor Judge Simon, ordered arbitration of the Union's claims under the Act.

The Union asserts the Act does not apply to labor arbitrations.  The cases on which the Union relies are based on the unique but now overturned view of the Ninth Circuit that the language in § 2 of the Act must be construed to exclude labor and employment contracts from the protection of the Act.[5]

In *Craft v. Campbell Soup Co.*, 177 F.3d 1083 (9th Cir. 1999),[6] the Ninth Circuit narrowly construed the language of § 2 to expressly limit the application of the Act to contracts governing "transactions" involving commerce, and defined a transaction as a "commercial deal or merchant's sale." *Id*. at 1085.  The Ninth Circuit reasoned that because labor and employment contracts did not constitute contracts "evidencing a transaction" as required in § 2, the Act did not apply.  *Id*. at 1085.

--------

[5] 9 U.S.C. § 2 provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part therefore, or an agreement in writing to submit to arbitration an existing controversy arising out such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[6] The Union actually cites to *Craft v. Campbell Soup Co.*, 161 F.3d 1199 (9th Cir. 1998), which was amended by this opinion.

The Ninth Circuit subsequently relied on *Craft*[7] in finding that federal law, and specifically the LMRA, exclusively governs a suit for breach of a collective bargaining agreement and that the Act "does not apply to labor or employment contracts." *Rubbermaid Office Products, Inc. v. Local 451 United Steelworkers of Am.*, No. 97-55728, 1999 WL 50862 at *1 (9th Cir. Jan. 7, 1999).[8]

The Supreme Court addressed *Craft* and *Rubbermaid* in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001), specifically recognizing the Ninth Circuit was the only court of appeals interpreting the Act to exclude all employment contracts. The Court explained the Act was enacted in "response to hostility of American courts to the enforcement of arbitration agreements," and that § 2 of the Act should be "interpreted as implementing Congress' intent 'to exercise [its] commerce power to the full.' " *Id.* at 112 (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)). The Court noted the Ninth Circuit's interpretation of §2 was directly contrary to its holding in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), that "§ 2 required the arbitration of an age discrimination claim based on an agreement in a securities registration application, a dispute that did not arise from a 'commercial deal or merchant's sale.' " *Circuit City*, 532 U.S. at 113. Additionally, the Ninth Circuit's view could not be reconciled with the Court's conclusion in in *Allied-Bruce* that the use of the term "involving commerce" used in § 2 of the Act is the functional equivalent of "affecting commerce" which is broadly construed to signal "an intent to exercise

---

[7]The court cited to the original version of the *Craft* opinion.

[8]The Union also cited *Carter v. Health Net of California, Inc.*, 374 F.3d 830 (9th Cir. 2004) a support for their argument the Act does not apply to labor arbitrations. However, the issue in *Carter* was not which federal standard governed the review of an arbitration award construing a collective bargaining agreement but, rather, which federal statute, if any, provided a federal court with federal question jurisdiction to review an arbitration award under state law upon removal from state court. *Id.* at 833-34.

Congress' commerce power to the full". *Circuit City*, 532 U.S. at 113-14.  The Court unequivocally

concluded the Act controls the arbitration of all employment contracts, with an exception of only

contracts of employment for transportation workers, thereby rejecting the unique view of the Ninth

Circuit.  *Id*. at 119 (2001) ("Section 1 exempts from the [Act] only contracts of employment of

transportation workers.")

The parties' arguments regarding which law applies to this court's review of the Award infers

the standards of review under the Act and the LMRA are radically different.  The court finds this is

not so.  Rather, the standards of review are comparable.

Under the Act, a district court may vacate an arbitration award only:

(1) where the award was procured by corruption, fraud or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (2007).  "These grounds afford an extremely limited review authority, a limitation

that is designed to preserve due process but not to permit unnecessary public intrusion into private

arbitration proceedings." *Kyocera Corp. v. Prudential-Bach Trade Services, Inc.*, 341 F.3d 987, 998

(9th Cir. 2003).  To that end, a district court's review of an arbitration award is "both limited and

highly deferential." *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1288 (9th Cir.

2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1198 (9th Cir. 2004)).

A district court cannot review the merits of arbitration awards, and the question of whether an arbitrator's finding are supported by the evidence is beyond the scope of  the court's review. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640-42 (9th Cir. 2010). However, the Ninth Circuit has held that in the rare instance where an arbitration award is "completely irrational" or exhibits a "manifest disregard of law," the arbitrator has exceeded his powers under subsection four and an otherwise procedurally proper arbitration award may be vacated.  *Id*. at 641 (quoting *Kyocera,* 341 F.3d at 997).  "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law.  It must be clear from the record that the arbitrators recognized the applicable law and then ignored it."  *Mich. Mut. Ins. Co., v Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (internal quotation omitted).  "Moreover, to rise to the level of manifest disregard '[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.'" *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879-80 (9th Cir. 2007) (quoting *Carter*, 374 F.3d at 838).  On the other hand, an arbitration award is "completely irrational" if the decision fails to draw from the essence of the agreement or, in other words, is not derived from the agreement when viewed in light of the word of the contract and the conduct of the parties. *Lagstein*, 607 F.3d at 642 (citing *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009)).

While the court may conduct a very limited review of an arbitrator's legal conclusions, factual findings are generally not subject to the manifest disregard standard. *See Coutee v. Barington Capital Group, L.P.*, 226 F.3d 1128, 1133 (9th Cir. 2003) ("Manifest disregard of the facts is not an independent ground for vacatur in this circuit.").  However, "because facts and law are often intertwined, an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be

deemed a manifest disregard for the law." *Id*. at 1134.

On the other hand, the LMRA allows labor unions representing employees in an industry affecting commerce to bring lawsuits in federal court when they believe an employer has violated the labor contract. 29 U.S.C. §185(a). An employer violates the contract when it refuses to implement an arbitration award made in accordance with the parties' contractual grievance process. In such lawsuits, the courts' review of an arbitrator's award is narrow and limited.

The Supreme Court announced a strong public policy in favor of resolving labor disputes through arbitration in the cases known as the "*Steelworkers Trilogy*." *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 596 (1960) ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); and *Warrior and Gulf*, 363 U.S. 574 (1960). *See also Hawaii Teamsters and Allied Workers Union, Local 996 v. United Parcel Service*, 241 F.3d 1177, 1181 (9th Cir. 2001) ("Our task is, in essence, to review the procedural soundness of the arbitral decision, not its substantive merit."). Accordingly, "the courts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). The Ninth Circuit strictly follows these principles. *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995) ("In this circuit, because federal labor policy strongly favors the resolution of labor disputes through arbitration, '[j]udicial scrutiny of an arbitrator's decision is *extremely* limited.' ") (italics in original, citations omitted).

Courts are not authorized to reconsider the merits of an award, as doing so would undermine the federal policy of settling labor disputes by arbitration. *Id*. An arbitration award must be upheld

"as long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice.' *Id*. (citing *Enterprise Wheel*, 363 U.S. at 597). As long as the award represents a "plausible interpretation of the contract" the court is bound to enforce it. *United Food & Commercial Workers Union, Local 1119, AFL-CIO v. United Markets*, 784 F.2d 1413, 1415 (1986) (internal citations omitted). *Accord Van Waters & Rogers, Inc. v. Int'l Brotherhood of Teamsters*, 56 F.3d 1132, 1136 (9th Cir. 1995) ("An arbitration award must be confirmed '[a]s long as the arbitrator is *even arguably* construing or applying the contract and acting within the scope of his authority.") (italics in original). The court's task "is to determine *whether* the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly." *Hawaii Teamsters*, 241 F.3d at 1178 (italics in original).

However, an arbitrator is not completely without constraints in deciding disputes submitted pursuant to a collective bargaining agreement. There are three exceptions to this deferential review standard. First, the court will not defer to the arbitrator's award if the award does not "draw its essence" from the collective bargaining agreement. *Enterprise Wheel*, 363 U.S. at 597. "An award draws its essence from the [collective bargaining agreement] when it is based on language in the [collective bargaining agreement]." *SFIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94*, 103 F.3d 923, 925 (9th Cir. 1996). As the Supreme Court observed:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel*, 363 U.S. at 597. Thus, an award does not draw its essence from the collective

bargaining agreement when it "ignores the plain language of the contract and 'manifestly disregards' the contours of the agreement." *Stead Motors of Walnut Creek v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1205 n.6 (9th Cir. 1989), *cert. denied*, 495 U.S. 946 (1990). *See also Fredrick Meiswinkel, Inc. v. Laborer's Union Local 261*, 744 F.2d 1374, 1376 (9th Cir. 1984) ("An award that conflicts directly with the contract cannot be a 'plausible interpretation.'") (citation omitted); *United Markets*, 784 F.2d at 1415, 1416 (if the arbitrator's interpretation violates or is "in direct conflict with" the terms of the agreement, the interpretation is implausible and the court cannot enforce the award). In short, "an arbitrator's award is not bulletproof;" he is not free to "follow his own whims and biases" and "dispense his own brand of industrial justice." *Hawaii Teamsters*, 241 F.3d at 1181, 1182, citing *Garvey v. Roberts*, 203 F.3d 580, 588-89 (9th Cir.2000), and *Enterprise Wheel*, 363 U.S. at 597.

Second, an award will not be upheld if the arbitrator exceeded the boundaries of the issues presented in making the award. *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989). The arbitrator's determination of the scope of the review before him is entitled to the same level of deference as is the interpretation of the collective bargaining agreement itself. *Id*. Nonetheless, the contract limits an arbitrator's authority and the arbitrator "can bind the parties only on those issues that they have agreed to submit to him." *Fredrick Meiswinkel*, 744 F.2d at 1377.

Third, the court cannot uphold an arbitrator's award if the implementation of that award would violate public policy. *Misco*, 484 U.S. at 43. "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco*, 484 U.S. at 373. The court must find

that an explicit and well-defined public policy exists, and that the policy specifically precludes the relief the arbitrator awarded. *Foster Poultry Farms*, 74 F.3d at 174. For example, "[i]f a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that bars reinstatement. Courts cannot determine merely that there is a 'public policy' against a particular sort of behavior in society generally . . . ." *United Transp. Union v. Burlington N. R.R. Co.*, 864 F. Supp. 138, 141 (D. Or. 1994).

Gulf Coast moves to vacate the Award under the Act, arguing it was completely irrational in that it "fail[ed] to draw from the essence of the agreement or, in other words, is not derived from the agreement when viewed in light of the word of the contract and the conduct of the parties." (Def.'s Mot. 8). Alternatively, Gulf Coast contends the Award was made in manifest disregard of the law because it "ignored both the law of procedural arbitrability and legally dispositive facts commanding denial of the grievance." (Def.'s Mot. 11.) The Union seeks confirmation of the Award under the LMRA noting that it "draws it essence from the collective bargaining agreement" and "the procedural arbitrability determination is correct and owed deference." (Pl.'s Mem. 7, 10).

Based on the arguments offered by the parties, the Act and the LMRA provide similar grounds for vacating or confirming an arbitration award, at least in this context. A court's review under both the Act and the LMRA is extremely limited and deferential. Both standards require the court to determine whether the arbitration award honors the essence of the arbitration agreement, the conduct of the parties, and existing law, and whether the arbitrator acted within the scope of his powers. The court is not allowed, under either standard, to reconsider the merits of the arbitration award.

The Act and the LMRA require similar analysis under similar constraints. Accordingly, the

Page 23- FINDINGS AND RECOMMENDATION                                    *{SIB}*

application of the standard of review under the Act and the LMRA will result in similar outcomes.

This conclusion is supported by the Ninth Circuit which, despite its unique position that the Act does

not apply to the review of arbitration awards involving collective bargaining agreements, looks to

the Act, and cases construing the Act, as instructive in analyzing issues surrounding the arbitration

of collective bargaining agreements under the LMRA. *Am. Postal Workers Union of Los Angeles,*

*AFL-CIO v. United States Postal Service,* 861 F.2d 211, 215 n.2 (9th Cir. 1988). The court need not

determine which standard of review applies to the Award because here the standards of the Act and

the LMRA are interchangeable.

*Discussion*

I. Essence of the Agreement

Gulf Coast argues that the Award violates the essence of the Agreement in that it completely

ignores the grievance process contained therein. Gulf Coast contends the Union waived its right to

pursue this action when it failed to process the grievance in a timely manner under the terms of the

Agreement and Hobgood's failure to specifically mention the grievance provision language

establishes the Award violates the essence of the Agreement.

Gulf Coast is correct – Hobgood did not specifically mention or quote the grievance

procedure in the Award. This, however, is not dispositive of the issue. "[A]rbitrators are not

required to state the reasons for their decisions." *A. G. Edwards & Sons , Inc. v. McCullough,* 967

F.2d 1401, 1403 (9th Cir. 1992) (citing *Enterprise Wheel,* 363 U.S. at 598). This rule "presumes the

arbitrators took a permissible route to the award where one exists." *A.G. Edwards,* 967 F.2d at 1403.

Therefore, Hobgood's failure to reference the express language of the grievance procedure does not,

in and of itself, warrant vacation of the Award.

While Hobgood did not expressly rely on the provisions of the Agreement in rejecting Gulf Coast's waiver argument, he did reference the grievance procedure by holding that "[Gulf Coast's] argument that the Union failed to exhaust its administrative remedies provided in the [Agreement] is without merit." (Def.'s Mot. Ex. 6 at 9.) Hobgood then explained that Gulf Coast's request for arbitration was "an acknowledgment by [Gulf Coast] that this matter is properly before the arbitrator for a decision on its merits under the [Agreement], and "effectively waived any contractual time limits on this issue." (Def.'s Mot. Ex. 6 at 9.)

Hobgood considered the evidence offered at the hearing and the arguments made by the parties on the application of the grievance procedure to this action, and found Gulf Coast's conduct waived its right to enforce the express terms of the grievance procedure. This finding is consistent with the language in the grievance procedure allowing the parties to extend the grievance time limits by mutual agreement. Gulf Coast's demand for arbitration under the Agreement could reasonably be viewed as its consent to an extension of the time limits, thereby waiving any argument based on the Union's failure to timely process its grievance.

Hobgood's determination that Gulf Coast waived its right to object to the Union's failure to timely process the grievance under the Agreement was based on the conduct of the parties and was not contrary to the express terms of the Agreement allowing the parties to extend the grievance deadlines by mutual consent. The Award was drawn from the essence of the Agreement, is not completely irrational or irreconcilable with plain terms of the grievance procedure, represents a plausible interpretation of the Agreement, and, therefore, should not be vacated on this ground.

II. Manifest Disregard of Law

" '[P]rocedural' questions which grow out of the dispute and bear on its final disposition"

are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). Accordingly, arbitrators are solely responsible for determining whether conditions precedent to arbitration, such as "allegations of waiver, delay, or a like defense to arbitrability" have been fulfilled. *Howsam*, 537 U.S. 84-85 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Gulf Coast argues that Hobgood failed to address the issue of procedural arbitrability in the Award and, thereby, exceeded his authority. It is clear from the Award that Hobgood considered the arguments made by the parties on the issue of waiver and determined that Gulf Coast had waived its right to object to the Union's failure to comply with the Agreement's grievance procedures. While the Award does not find that the Union waived its right to pursue its claim, as argued by Gulf Coast, it does address the allegations of waiver, delay, or a like defense to arbitrability made by the parties. Hobgood's rejection of Gulf Coast's argument was not a failure to address that argument or the procedural arbitrability issue properly before him.

Gulf Coast then appears to argue that Hobgood improperly relied on a ruling by this court in finding that it had waived its right to complain about the Union's failure to comply with the grievance procedure. Hobgood rejected Gulf Coast's argument the Union failed to exhaust the Agreement's grievance procedure, finding it to be without merit based on Gulf Coast's request for arbitration, granted by this court, in which Gulf Coast effectively waived any time limits on this issue. Gulf Coast perceives this conclusion to be based on a finding by the court that its request for arbitration waived any objection to the Union's failure to pursue the grievance procedure in a timely manner. Gulf Coast did not present this issue to the court and the court did not address it, creating

an impediment to Gulf Coast's perception.  An equally, if not more, plausible construction of Hobgood's ruling is that he considered Gulf Coast's request for arbitration to be a concession that arbitration is appropriate under the Agreement and, accordingly, a waiver of any defense to arbitrability.  This construction is consistent with existing law.  *See Torrington Co. v. Local Union 590, Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 803 F.2d 927, 931 (7th Cir. 1986) (parties are bound by position taken before court that dispute was arbitrable under collective bargaining agreement).  Giving the Award the deference is it entitled to, the court is unable to find Hobgood improperly relied on a ruling by this court addressing an issue of procedural arbitrability in manifest disregard of the law.

Gulf Coast also argues Hobgood ignored well-settled precedent establishing that failure to follow a grievance procedure set forth in a collective bargaining agreement results in waiver of the grievance.  This argument is without merit.  Hobgood's determination that Gulf Coast's waived its right to object to the Union's failure to timely process its LMRA claim under the Agreement's grievance procedure is not contrary to existing case law.

The Ninth Circuit has acknowledged that "[a]s a general rule, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement."  *Carr v. Pacific Maritime Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) (citing *Clayton v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 451 U.S. 679, 686 (1981)).[9]  However, after stating this general rule, the Ninth Circuit then addressed the issue of whether the plaintiffs were excused from exhausting the

---

[9]The United States Supreme Court itself summarized its holding in *Clayton* as finding that "exhaustion of intraunion remedies is not always required".  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983).

contractual remedies based on the employer's conduct implying that, under certain circumstances, the failure to exhaust such remedies may be forgiven. *Carr*, 904 F.2d at 1317-20. The court rejected the plaintiff's assertions they were excused from exhausting their contractual remedies based on a lack of neutrality, inadequacy of the grievance process and remedies, and repudiation of the grievance procedure, relying on the facts before it and not the inability to claim waiver of the contractual grievance procedure as a matter of law. *Id*. The Ninth Circuit's description of the exhaustion requirement as a "general rule" and its consideration of the plaintiff's waiver arguments make clear that a defendant's actions may distinguish its right to object to a plaintiff's failure to exhaust a grievance procedure before seeking to enforce the collective bargaining agreement in court.

Finally, Gulf Coast argues Hobgood disregarded the legally dispositive fact the Union failed to comply with the grievance process and, as such, manifestly disregarded the law. Hobgood did not disregard the Union's failure to timely process a grievance, as conceded by Gulf Coast in stating "the Arbitrator himself acknowledged Gulf Coast's arguments and the Union's failure to follow Article IX." (Def.'s Mot. 13.) Rather, Hobgood found Gulf Coast waived its right to complain about the Union's conduct by demanding arbitration of the Union's claims. Whether the Union was, in fact, in violation of the grievance procedure was not relevant to Hobgood's findings and, consequently, not legally dispositive of the Union's claims.

The question of whether Gulf Coast's seeking referral of this action to arbitration waived its right to object to the Union's failure to comply with the grievance procedure in the Agreement is a question of procedural arbitrabilty to be decided by the arbitrator. The record reveals the parties argued this issue before, during, and after the hearing, placing the issue clearly before Hobgood. Despite the emphasis placed by the parties on this issue, and the importance of the issue to the

resolution of the parties' claims, Hobgood barely addressed the issue in Award, obliquely referencing the three-step grievance procedure in the Agreement and stating his conclusion in the most general terms. The court does not agree with Hobgood's conclusion nor does it condone the cursory manner in which he addressed the issue, nonetheless, the court must afford Hobgood's decision on procedural arbitrability the extreme deference required by governing precedent. That said, the Award does address the issue and is consistent with existing law which requires an arbitrator to consider allegations of waiver, delay, or similar defenses to arbitration. Consequently, the Award was not made in manifest disregard of the law.

III. Phrasing the Issue

Gulf Coast argues Hobgood erred in framing the issue before him by not expressly referencing questions surrounding the procedural arbitrability of the Union's claim. Even assuming Hobgood erred in this manner, the Award makes it clear that he specifically addressed the procedural arbitrability issues. Accordingly, any error in the phrasing of the issue was remedied by Hobgood's resolution of the procedural arbitrability issues.

*Conclusion*

The Union's motion (#78) to confirm the Award should be GRANTED and Gulf Coast's motion (#75) to vacate the Award should be DENIED.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **November 19, 2014**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and

Recommendation will go under advisement.

DATED this 4th day of November, 2014.


                            _____/s/ John V. Acosta_____
                                  JOHN V. ACOSTA
                            United States Magistrate Judge