UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

REGIONAL LOCAL UNION NO. 846,                      Case No.: 3:11-CV-658-AC
International Association of Bridge
Structural, Ornamental and Reinforcing                     FINDINGS AND
Iron Workers, AFL-CIO, by and through                  RECOMMENDATION
LUIS QUINTANA, in his representative
capacity as Business Manager; and
REGIONAL DISTRICT COUNCIL
WELFARE PLAN AND TRUST, f/k/a
LOCAL 846 REBAR WELFARE TRUST,
by and through its Board of Trustees;
and REGIONAL DISTRICT COUNCIL
RETIREMENT PLAN AND TRUST,
f/k/a REBAR RETIREMENT PLAN
AND TRUST; by and through its Board
of Trustees; and REGIONAL DISTRICT
COUNCIL TRAINING TRUST, f/k/a
LOCAL 846 TRAINING TRUST; by and
through its Board of Trustees; and
REGIONAL DISTRICT COUNCIL
VACATION TRUST FUND, f/k/a

LOCAL 846 VACATION TRUST, by
and through its Board of Trustees;

                          Plaintiffs,

        v.

GULF COAST REBAR, INC., a Florida
corporation, f/k/a GULF COAST
PLACERS, INC., a Florida corporation,

                          Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

        Plaintiffs Regional Local Union No. 846 of the International Association of Bridge,

Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO (the "Union"), and the Regional

District Council Welfare Trust, the Regional District Council Pension Trust, the Regional District

Council Training Trust, and the Regional District Council Vacation Trust (collectively "Trusts"),

filed this action to recover amounts allegedly owed them by defendant Gulf Coast Rebar, Inc. ("Gulf

Coast"), pursuant to the terms of a collective bargaining agreement entered into between the Union

and Gulf Coast on March 13, 2009 (the "Agreement").  On October 22, 2012, this court granted Gulf

Coast's motion to compel arbitration of the Union's claim brought under § 301 of the Labor

Management Relations Act of 1947 (29 U.S.C. §§ 141-197) (the "LMRA"), and stayed the Trusts'

claims brought under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001-

1114) ( the "ERISA").

        On April 9, 2014, the arbitrator issued a decision in favor of the Union, finding Gulf Coast

had engaged in rebar work covered by the Agreement and may have incurred financial obligations

to the Union as a result  (the "Award").  The arbitrator directed Gulf Coast to submit to an audit to determine the amount, if any, of dues and assessments owed from August 2009 to the present.  On January 26, 2015, the court affirmed the Award.  The Union and the Trusts (collectively "Plaintiffs") filed a Second Amended Complaint on November 23, 2015, (the "Complaint") seeking partial judgment in the amounts found owing from January 2010 through March  2015 in an audit initiated in March 2015 (the "Audit"), and an order directing Gulf Coast to submit to an audit for the period of April 2015 to the present.  Presently before the court is Gulf Coast's motion to dismiss the Complaint, as well as an alternative motions to stay, compel arbitration, or transfer venue to the Middle District of Florida.

The court finds the determination of the amounts due under the Agreement requires interpretation and application of the Agreement and must be resolved in arbitration, a stay of the Trusts' claims pending arbitration is appropriate, the Trusts have stated a valid claim for liquidated damages, and transfer of venue is  not appropriate at this time.  Accordingly, the court should grant Gulf Coast's motion to refer the action to arbitration to determine the amounts due Plaintiffs under the Agreement based on the Audit and to determine Gulf Coast's liability for sums accrued after March 2015, stay the Trusts' claims pending arbitration, deny Gulf Coast's motion to dismiss the Trust's claim for liquidated damages, and deny Gulf Coast's motion to transfer venue with leave to refile.

*Background*

The Agreement covers employees performing work "provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers" as employees of Gulf Coast in identified areas "which

are coterminous with the geographic jurisdiction of Local 846 and Local 847." (Second Am. Compl., ECF No. 107 ("Compl."), Ex. 1, Arts. IV, XXI.) The Agreement expressly provides for the creation of the Trusts. (Compl. Ex. 1, Art. XVII, §§ 1-4.) Gulf Coast, as the "Employer" in the Agreement, agreed to be bound by the terms of the Trusts and the rules adopted by the trustees then in effect and as they may be amended during the term of the Agreement, and to make timely payments to the Trusts for the benefit of its employees. (Compl. Ex. 1, Art. XVII, §§ 1-6, 9.)

The Agreement provides:

> any Employer obligated to the terms and provisions of this Agreement shall contribute, pay and remit to the trustees of the fund or funds at the office of the fund or funds amounts as set for in Appendix A for each hour worked by each employee[1] covered by this Agreement until such time that the rate of contribution may be changed in the manner hereinafter provided for. This Agreement authorizes contributions to such pension, health and welfare, vacation, annuity and other welfare benefit funds as are legal and appropriate under ERISA or under any other applicable Federal Labor Law to which the Employer and International Association agree to make contributions in such amount as is agreed and reflected in Appendix A Fringe Benefits.

(Compl. Ex. 1, Art. XVII, § 6.) Contributions to the Trusts were due the fifteenth day of the month following the month the work was performed. (Compl. Ex. 1, Art. XVII, § 8.) Failure to meet this deadline resulted "in the accrual of interest at the rate of one and one-half percent ( 1½ %) per month for all unpaid balances, plus such accounting fees, attorney fees, auditing fees, and other expert fees as are necessary if litigation is filed to collect said delinquent amounts. (Compl. Ex. 1, Art. XVII,

---

[1]With regard to individuals designated as "key employees" by Gulf Coast, Gulf Coast agreed to "make timely payments into all fringe benefit funds negotiated and described" in the Agreement. (Compl. Ex. 1, Art. XVII, § 5.) In the event a "key employee" designated a home local union other than the Union, Gulf Coast agreed to make contributions to the home trust funds at the customary rates set by those funds. (Compl. Ex. 1, Art. XVII, § 5.) As the contributions on behalf of key employees are to be made to local unions and trusts other than Plaintiffs, it appears these contributions are not at issue.

§ 8.)

The Union and the trustees are required to meet at least annually to "determine the amount of funds to be distributed to each of the pension, health and welfare, annuity, vacation and other welfare benefits trusts, which constitute the fringe benefit trusts covered by the Agreement." (Compl. Ex. 1, Art. XVII, § 7.)  While the contribution rates for each trust may vary depending on the needs of the various trusts, "[t]he sum of all contributions to all trusts shall always equal the amounts reflected for the appropriate time period in Appendix A." (Compl. Ex. 1, Art. XVII, § 7.) The contribution sums in effect at the time the Agreement was executed were $0.90 for Arkansas, Oklahoma, and Texas, and $2.00 for the remaining identified states.[2]  (Compl. Ex. 1, at 14.)  The $0.90 contribution sum allocated $0.50 to training; $0.35 to bonus/vacation accrual; and $0.05 to "industry adv.", while the $2.00 contribution sum allocated $1.10 to individual and family health care coverage; $0.35 to bonus/vacation accrual; $0.50 to apprenticeship and training; and $0.05 to "industry adv.".  (Compl. Ex. 1, at 14.)

Gulf Coast's failure to timely pay all contributions and file all reports allowed the Union to engage in a work stoppage, strike or other legal economic activity, as well as pursue the grievance procedure set forth in the Agreement.  (Compl. Ex. 1, Art. XVII, § 9.)  The Agreement created a three-step grievance process to resolve "[a]ny question arising out of this Agreement involving its interpretation or application, excluding trades jurisdictional disputes." (Compl. Ex. 1, Art. IX, § 1.) The failure to resolve the dispute in the first two steps of the process "shall constitute a basis for submittal of the dispute to arbitration." (Compl. Ex. 1, Art. IX, § 1.)  "The decision of the Arbitrator

---

[2]Iowa was the only state with a $4.00 fringe benefit contribution sum.  (Compl. Ex. 1, at 14.)

shall be binding upon all parties."  (Am. Compl. Ex. 1, Art. IX, § 1.)

On May 31, 2011, Plaintiffs initiated this action against Gulf Coast seeking to recover contributions, dues, and assessments allegedly owed them under the Agreement.  Over the next year and a half, Gulf Coast moved on three occasions to dismiss the action for lack of standing, lack of personal jurisdiction, failure to allege a breach of the Agreement, failure to state a claim under either the LMRA or the ERISA, and failure to exhaust administrative remedies.  Alternatively, Gulf Coast sought to compel arbitration or a transfer of venue to Florida.   Plaintiffs remedied various deficiencies in the initial complaint by filing an amended complaint and the court found Plaintiffs had stated viable claims under the LMRA and the ERISA in the amended complaint and that it had personal jurisdiction over Gulf Coast. *Regional Local Union No. 846 v. Gulf Coast Rebar*, No. 3:11-cv-658-AC,  2012 WL 5208485, *3 (D. Or. Oct. 22, 2012)("*Local 846 I*").  However, the court found the Union's LMRA claim was subject to the mandatory arbitration clause in the Agreement, compelled the parties to arbitrate the Union's claim, and stayed the Trusts' claims.[3]  *Local 846 I*, 2012 WL 5208485, at *2.

Gulf Coast initiated arbitration before William P. Hobgood ("Hobgood") and Hobgood presided over an arbitration hearing on January 7, 2014.  At the outset, the parties were unable to agree on the issue to be decided by Hobgood.  The Union phrased the issue to be "whether [Gulf Coast] violated the [Agreement] by failing to remit dues and working assessments through the dues check-off provision and, if so, what remedy is appropriate."  (Def.'s Mot. to Vacate Arbitration Award, ECF No. 75, ("Mot. to Vacate") Ex. 4, at 5.)  Gulf Coast disagreed and indicated the issue

---

[3]The court denied Gulf Coast's alternative motion to transfer venue as moot in light of the referral of the Union's claim to arbitration and resulting stay of the Trusts's claims.

"is Count II in the [Amended Complaint] as ordered by the District Court judge for the District of Oregon in Case 11-658." (Mot. to Vacate Ex. 4, at 5.)  The parties subsequently agreed to let Hobgood phrase the issue. (Mot. to Vacate Ex. 4, at 5.)

Hobgood issued the Award on April 9, 2014, sustaining the Union's grievance. (Mot. to Vacate Ex. 6.) Hobson phrased the issue as follows: "Did [Gulf Coast] violate ARTICLE XVII FRINGE BENEFIT FUNDS, ARTICLE XVIII IMPACT and ARTICLE XIX DUES CHECK-OFF of the [Agreement] between the [Union] and [Gulf Coast]? If so, what is the appropriate remedy?" (Mot. to Vacate Ex. 6, at 4.) Hobson found Gulf Coast had engaged in rebar work covered by the Agreement and "may have incurred financial obligations to the Union's funds." (Mot. to Vacate Ex. 6, at 10-11.) He directed Gulf Coast to "submit to an audit to determine all dues and assessments owed from the periods August 2009 to the present." (Mot. to Vacate Ex. 6, at 11.)

Gulf Coast moved to vacate the Award and, in response, Plaintiffs moved to confirm and enforce the Award. On January 26, 2015, the court denied Gulf Coast's motion to vacate and granted Plaintiff's motion to confirm and enforce the Award. *Regional Local Union No. 846 v. Gulf Coast Rebar*, 83 F. Supp. 3d 997, 999 (D. Or. 2015)("*Local 846 II*"). Defendant subsequently submitted to the Audit, which covered the period from January 2010 through March 2015. (Compl. ¶ 29.) The Audit revealed Gulf Coast owes Plaintiffs $876,177.41 in contributions, $354,761.21 in dues, $160,925,90 in liquidated damages, and $465,859.45 in interest. (Compl. ¶ 29.)

Plaintiffs then filed the Complaint, alleging the Union is a "voluntary unincorporated association existing pursuant to the laws of the State of Florida," the William C. Earhart Company of Portland, Oregon, administers the Trusts and "processes union dues checkoff," and Gulf Coast is a Florida corporation with its principal place of business in Jacksonville, Florida. (Compl. ¶¶ 1,

7, 11, 12.)  Plaintiffs rely on sections 502(e)(2) of the ERISA, found at 29 U.S.C. § 1132(e)(2), and

sections 301(a) and (c) of the LMRA, found at 29 U.S.C. §§ 185(a) and (c), for subject matter

jurisdiction over their claims, and assert venue is proper in this court based on the administration of

the Trusts, and the processing of union dues checkoff, in Oregon.  (Compl. ¶¶ 10-12.)

Plaintiffs further allege the existence of the Agreement, the obligation of Gulf Coast to make

contributions and report its hours to Plaintiffs under the Agreement, and Gulf Coast's liability for

"interest in the amount of [one and] one-half percent (1 1/2 %) per month on all unpaid balances,

accounting fees, attorney's fees, auditing fees and expert fees in the event of litigation to collect

delinquent contributions" under the Agreement.  (Compl. ¶¶ 13, 18, 20-21.)  Plaintiffs allege Gulf

Coast is also liable for liquidated damages in the amount of twenty percent of any delinquency under

Section 502(g)(2)(C) of the ERISA.  (Compl. 22.)  Plaintiffs finally allege Gulf Coast performed

work covered by the Agreement after the Audit, but failed to submit reports, contributions, or dues

for the post-audit period.  (Compl. ¶ 30.)

In Count I, the Trusts seek entry of a partial judgment against Gulf Coast in the amount of

$876,177.41 for contributions through March 30, 2015, $160,925.90 in liquidated damages, and

$465,859.45 in interest, as well as attorney fees, auditing fees, accounting fees, experts fees and other

costs.  (Compl. at 8-9.)  The Trusts also ask the court to order Gulf Coast to submit records for an

audit covering the period after March 2015, and enter an appropriate award for post-audit

contributions, liquidated damages, and interest.  (Compl. at 8-9.)  In Count II, the Union seeks entry

of a partial judgment against Gulf Coast in the amount of $354,761.21 for dues through March 30,

2015; costs recoverable under the Agreement, an order directing Gulf Coast to submit records for

an audit for the period after April 1, 2015, and judgment for post-audit dues and costs.  (Compl. at

9-10.)

*Legal Standards*

## I.  Motion to Dismiss under FED. R. CIV. P. 12(b)(1)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court."  *Ahmed v. Scharfen*, No. C 08-1680 MHP, 2009 WL 55939, at *3 (N.D. Cal. Jan. 7, 2009) (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039-40 (9th Cir. 2003)).  This challenge to jurisdiction may be either facial or factual, depending on whether the motion relies only on the allegations in the complaint or if it relies on evidence extrinsic to the complaint as well.  *See Savage*, 343 F.3d at 1039 ("In evaluating the rule 12(b)(1) motion to dismiss, the district court considered affidavits furnished by both parties.  This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." (citation omitted)).  Where the challenge is factual, the court "need not" presume true the allegations contained in the complaint.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The party asserting jurisdiction bears the burden of establishing that it exists in a given case.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182-183 (1936)).

## II.  Motion to Dismiss under FED. R. CIV. P. 12(b)(6)

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2)(2016).  A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)(quoting *Iqbal*, 129 S. Ct. at 1949).

## III.  Motion to Compel Arbitration

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties intended to arbitrate is to be decided by the court, not the arbitrator." *AT&T Tech. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986).

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT&T Tech*, 475 U.S. at 650 (quoting *Warrior and Gulf*, 363 U.S. at 583-83). The principal justification for the presumption favoring arbitration is that "arbitrators are in a better position than courts to interpret the terms of a [collective bargaining agreement]." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78  (1998).

## IV.  Motion to Stay

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  However, "case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Express, Inc. v. Navigator Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

A district court "can stay any statutory claim that arises out of substantially the same facts present in an ongoing administrative or arbitral proceeding." *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984).  The stay of a ERISA claim should be premised on: "(1) receipt of satisfactory assurances that the arbitration is proceeding with diligence and efficiency, and (2) a determination that the relief available under section 502 of ERISA, 29 U.S.C. § 1132, will not be jeopardized by the stay." *Id.* (internal quotation marks and citations omitted).

## V.  Motion to Transfer Venue

"A defendant for whom venue is proper but inconvenient may move for a change of venue under 28 U.S.C. § 1404(a)." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a)(2016).  In determining whether permissive transfer of venue is warranted, the court balances the convenience of the parties and location of the evidence, as well as other considerations, against the plaintiff's preferred venue. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Exact Order*

*Specialties v. Glow Industries*, No. 03:12-cv-00631-HU, 2012 U.S. Dist. LEXIS 117170, at *18 (D.

Or. Aug. 20, 2012) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th

Cir. 1986)).

*Discussion*

I.  Claims for Amounts Due Through March 2015

A.  *The Trusts' Claims under the ERISA*

Gulf Coast moves to dismiss the Trusts' claims for a partial judgment on past-due

contributions and interest through March 2015, arguing the amounts owed under the Agreement must

be determined by the arbitrator.  Gulf Coast contends that because Hobgood required the Union only

to submit to an audit but failed to determine specific amounts due the Trusts under the Agreement,

an arbitrator should be given the opportunity to address this question.  Additionally, Gulf Coast

argues the Agreement vests authority to determine the contributions owed under the Agreement to

the Union and Gulf Coast.  Consequently, the Trusts have no standing to seek such a determination

by the court.  Finally, Gulf Coast alternatively moves to stay the Trusts' claims pending issuance of

an arbitration award determining the amounts due under the Agreement.

Gulf Coast argues Hobgood's failure to consider the Audit and determine amounts owed

under the Agreement prevents the Trusts from obtaining the relief requested: a judgment for

contributions and interest identified as due in the Audit.  The Trusts argue the only arbitrable issue

relevant to the ERISA claims – whether Gulf Coast was bound by the Agreement – was resolved by

Hobgood in a final and binding award.  The Trusts contend the amounts due them are determined

with reference to the terms of the Trusts and the ERISA, not the Agreement.  Accordingly, the

Trusts' claims are not reliant on the Agreement and are, therefore, not subject to further arbitration

in any event.

The court referred the Union's claim to arbitration to allow an arbitrator to interpret and apply the Agreement in the first instance. *Local 846 I*, 2012 WL 5208485, at *2. The court stayed the Trusts' claims pending such arbitration finding "the claims raised by the [Trusts] require construction of the [Agreement] and are similar to" the Union's claim. *Local 846 I*, 2012 WL 5208485, at *4. The court then reasoned:

> It may be that the Trusts could have pleaded an ERISA claim without reference to the [Agreement]. If they had done so, there may not have been reason to stay that claim pending arbitration of [the Union's] LMRA claim. As pleaded, however, the ERISA claim relies on and requires an interpretation and application of the [Agreement]. If this Court were to permit the Trusts to proceed on the ERISA claim, the Court may be forced to interpret and apply the [Agreement]. Yet, as noted above, Supreme Court precedent strongly counsels against the Court making findings regarding the interpretation and application of a [collective bargaining agreement] before arbitration is complete. The court agrees, therefore, with Judge Acosta that the Trusts' ERISA claims should be stayed pending arbitration of the [Union's] LMRA claim.

*Id.* Accordingly, the court determined the Trusts' claims implicate the Agreement.

This finding is equally applicable to the Trusts' claims currently before the court. The Trusts allege "the Agreement requires Defendant to pay contributions at specified hourly rates for each hour worked by each employee covered by the Agreement" at the rates of contribution and within the time schedule provided in the Agreement. (Compl. Ex. 1, ¶¶ 18-20.) The Trusts allege they are the "authorized agent under the [Agreement] and related Trust agreements for contributions and deductions required under the Agreement." (Compl. Ex. 1, ¶ 25.) The Trusts seek interest on unpaid contributions at the rate set by the Agreement and litigation costs allowed under the Agreement. (Compl. Ex. 1, ¶ 21.) In other words, the Trusts seek to recover amounts due under the Agreement at hourly rates determined in the Agreement on behalf of employees performing craft work covered

by the Agreement within geographical areas specified in the Agreement and for interest and litigation costs as set forth in the Agreement.  Based on the allegations of the Complaint, the obligation to contribute and the amounts due the Trusts are clearly based on the express terms of the Agreement.  Consequently, the Trusts' claims are subject to any additional arbitration ordered by the court to interpret and apply the Agreement.

The Trusts argue Gulf Coast waived any right to further arbitration by moving to vacate the Award.  Gulf Coast contends the Award did not dispose of all of the issues before the arbitrator and that parties may seek court review of interim or partial arbitration awards without waiving the right to additional arbitration proceedings.

"In general, a district court should only confirm a final and binding arbitration award." *Sheet Metal Workers' Int'l Ass'n, Local 206 v. R. K. Burner Sheet Metal Inc.*, 859 F.2d 758, 760 (9th Cir. 1988).  This requirement is premised on judicial deference to the arbitration process.  "To allow judicial intervention prior to the final award would contravene the fundamental federal labor policy of deference to contraction dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings." *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987).  Accordingly, once an arbitrator has asserted jurisdiction, a district court generally may not review the arbitrator's ruling until the arbitrator relinquishes jurisdiction by issuing a final award. *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 (9th Cir. 1991),

"'To be considered "final," an arbitration award must be intended by the arbitrator to be [a] complete determination of every issue submitted. . . .'" *Millmen*, 828 F.3d at 1376 (quoting *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir. 1985)).  "Where an arbitrator

retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction 'indicates that the arbitrator did not intend the award to be final.'" *Orion*, 946 F.2d at 724 (quoting *Millmen*, 828 F.3d at 1376-77.)  For example, an arbitrator may issue an opinion determining liability but expressly retain jurisdiction to decide an appropriate remedy in the event the parties are unable to agree on that issue.  *Millmen*, 828 F.2d at 1376-77.

However, both the United States Supreme Court and the Ninth Circuit found it appropriate to refer an action back to arbitration after confirming an arbitration award addressing liability, to allow the arbitrator to determine the specific amounts due under the collective bargaining agreement. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)("We agree with the Court of Appeals that the judgment of the District Court should be modified so that the amounts due the employees may be definitely be determined by arbitration); *ILWU Local 142 v. Land & Constr. Co., Inc.*, 498 F.2d 201, 206 (9th Cir. 1974)("Nor does the trial court's remand [back to the arbitrator] for the purpose of determining the exact amount due Frietas represent an unwarranted judicial intrusion into the arbitrator's interpretation of the contract."); *Great Falls Mill and Smeltermen's Union No. 16 v. Anaconda Co.*, 402 F.2d 749 (9th Cir. 1968), *aff'g* 260 F. Supp. 445, 448 (D. Mont. 1966)("In accordance with the technique used in . . . *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, . . . it is ordered that [the] parties take steps to complete arbitration so that the award will contain a complete adjudication of the matters in dispute).  The Supreme Court explained "[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.  This is especially true when it comes to formulating remedies." *Enterprise*, 363 U.S. at 597.

Here, Hobgood identified the issues to be: (1) did Gulf Coast violate the Agreement; and (2) if so, what is the appropriate remedy. Hobgood found Gulf Coast performed work identified in the Agreement and may have incurred financial obligations to Plaintiffs as a result. Hobgood directed Gulf Coast to submit to an audit, noting it was the only way to determine the amount of the dues and assessments that might be owed to Plaintiffs. Hobgood resolved the substantive issues before him without expressly retaining jurisdiction to determine the specific amounts owed under the Agreement. Accordingly, the Award was properly considered final by the parties and the court. But, because consideration of the amounts due under the Agreement implicates specific terms of the Agreement and may require construction of the Agreement, the court finds an arbitrator must make that determination. Accordingly, the court adopts the technique adopted by the Supreme Court and the Ninth Circuit, and recommends remanding this action to Hobgood to determine the specific amounts due Plaintiffs under the terms of the Agreement.

Plaintiffs argue Gulf Coast waived the right to a remand by seeking to vacate the Award, an action they characterize as inconsistent with the right to seek further arbitration. "To demonstrate waiver of the right to arbitrate, a party must show: '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'" *United States v. Park Place Assoc., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). "Waiver of the right to arbitration is disfavored because it is a contractual right and, thus, any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (internal quotation marks and citations omitted). Even assuming Gulf Coast acted inconsistently with its existing right to arbitration, the Trusts have failed to establish sufficient prejudice from Gulf Coast's actions to meet their heavy burden of proof.

Plaintiffs claim prejudice based on the nearly five years that have passed since they filed their lawsuit on May 31, 2011. Gulf Coast timely sought to compel arbitration in its initial motion to dismiss filed August 3, 2011, and consistently asserted this right until the court ordered arbitration on November 22, 2012. The first act which could be viewed as inconsistent with a right to arbitration was Gulf Coast's filing a motion to vacate the Award on May 15, 2014. Accordingly, the initial three-year delay was in no way attributable to Gulf Coast's alleged "inconsistent act."

Furthermore, the audit ordered by Hobgood was not scheduled until March 24, 2015, after the court confirmed the Award on January 26, 2015, and the parties engaged in mediation from June through November of 2015 which efforts added five more months to this lawsuit. Therefore, neither party was interested in obtaining a judgment based on the results of the Audit from either the court or an auditor prior to November 2015. On January 11, 2016, Gulf Coast filed the current motion to dismiss seeking remand to an arbitrator to determine the amounts due and owing Plaintiffs based on the results of the Audit. The two-year delay from the first alleged inconsistent act resulted primarily from the joint conduct of the parties in briefing the motions to vacate and confirm the Award, participating in mediation, and ordering and completion of the Audit. In this context, the delay resulting solely from Gulf Coast's actions was minor and did not result in sufficient prejudice to Plaintiffs to establish waiver.

Gulf Coast also moves to dismiss the Trusts' claims, arguing the Trusts's lack standing to enforce obligations under the Agreement, to which they are not a party. Judge Simon previously found that by amending the original complaint to allege the Trusts are those identified in the Agreement, the Trusts established standing and that the amendment was not a futile. This ruling still applies. The Trusts are identified in the Agreement as funds to which Gulf Coast agreed to

Page 17- FINDINGS AND RECOMMENDATION                                        *{SIB}*

contribute on the terms and in the amounts set forth in the Agreement. At the least, the Trusts are intended third-party beneficiaries of the Agreement and are entitled to pursue an action to enforce the Agreement in this capacity. *Haines v. Pacific Bancorporation*, 146 Or 407, 410 (1934) (where parties to a contract intended to benefit a third party by entering into such, the third party may maintain an action to enforce the contract). The Trusts have standing to seek recovery of contributions due them under the terms of the Agreement.

Next, Gulf Coast again seeks to stay the Trusts' claims while an arbitrator determines the amounts due Plaintiffs under the terms of the Agreement. Such stay is appropriate. As discussed above, the Trusts' claims rely on, and require construction of, the Agreement. The determination of the amounts due the Trusts under the Agreement will be determined by an arbitrator at least as expeditiously as the court. Any amounts owed to the Trusts under the provision of the ERISA, unique from that owed under the Agreement, may be determined by the court with reference to the amounts awarded in arbitration. The Trusts' claims should be stayed pending completion of the arbitration.

Determination of the amounts owed to the Trusts is based on the terms of the Agreement and must be addressed in arbitration. Any delay resulting solely from Gulf Coast's motion to vacate the Award was minimal and did not result in sufficient prejudice to Plaintiffs to justify waiver of Gulf Coast's right to arbitration. The court should remand this action to an arbitrator to determine the specific amounts owed by Gulf Coasts to each of the Trusts under the terms of the Agreement in light of the results of the Audit. The Trusts' claims should be stayed pending arbitration.

### B. The Union's Claims under the LMRA

Gulf Coast moves to dismiss the Union's request for a partial judgment for unpaid dues and

assessments through the date of the Audit. Gulf Coast argues the court "previously dismissed with prejudice the Union's claim for an audit and for a judgment for delinquent dues because both claims are subject to mandatory arbitration" and the current claims should be dismissed for the same reason. (Def.'s Mot. Pursuant to FRCP 12, ECF No 113, at 2.) The court did not dismiss the Union's claims with prejudice. In fact, the court, after granting Gulf Coast's motion to compel arbitration of the Union's LMRA claim, specifically dismissed the claim without prejudice. *Local 846 I*, 2012 WL 5208485, at *5. Consequently, the Union is not barred from reasserting its claim. However, for the reasons discussed above, the court finds Gulf Coast did not waive its right to arbitration and the Union's claim should again be referred to arbitration for a determination of the amounts due the Union based on the Audit. Accordingly, the court recommends referring the Union's LMRA claim to arbitration and dismissing it without prejudice.

## II. Claims for Amounts Due After March 2015

Gulf Coast argues Plaintiffs' claim for a subsequent audit to determine dues, assessments, and contributions accruing after March 2015 is based on the interpretation and application of the Agreement and, therefore, subject to arbitration. Plaintiffs filed no opposition to this argument. Based on the prior rulings of the court, Palitniffs claims for a subsequent audit should be referred to arbitration.

## III. Liquidated Damages

The Trusts allege Gulf Coast is liable under the ERISA, specifically 29 U.S.C. § 1132(g)(2)(C), for liquidated damages in the amount of twenty percent of any delinquency. Section 1132(g)(2)(C) provides that in an action brought by a fiduciary to recover contributions due under a plan or collective bargaining agreement, "the court shall award the plan . . . liquidated damages

provided for under the plan in amount not in excess of twenty percent" of unpaid contributions. Gulf Coast argues the Trusts' failure to specifically reference amounts recoverable under the written provisions of the Trusts defeats their claim for such liquidated damages.

The ERISA provides the statutory authority for the Trusts' claims for liquidated damages. The Trusts' allegation they are entitled to liquidated damages under the ERISA, viewed in the light most favorable to the Trusts, establishes a right to claim such damages. The issue appears to be the amount of the liquidated damages. The ERISA sets a general cap of twenty percent but refers to the plan documents to set the actual amount. The amount of liquidated damages to which the Trusts are entitled is a matter for discovery, similar to any other claim for damages.

Furthermore, while the court generally limits its review to the allegations of the complaint on a motion to dismiss, the court may also consider documents referenced in the complaint but not physically attached thereto where the authenticity of such documents are not questioned by any party. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998). The Trusts provided copies of some trust documents referenced in the Complaint with their opposition to the motion to dismiss. Gulf Coast questions the applicability of the documents based on the dates of such documents, but does not question the authenticity of the documents and, in fact, offered similar documents in support of their motion.

One of the documents offered by Gulf Coast and two of the documents offered by the Trusts contain similar language authorizing the trustees to initiate actions to collect unpaid contributions and to assess and collect reasonable attorneys' fees, liquidated damages not to exceed twenty percent (20%), and interest at a rate to be determined by the trustees. (Miller Decl. Ex. 1, at § 4.1; Gardner Decl. Ex. 2, at § 5.04, Ex. 3, at § 5.04.) Similarly, the Collection Policies and Procedures created

and executed by the Trusts provide that any employer who fails to timely file a report or make contributions when they become due and payable, shall become liable for:

a)   Interest at the rate of one and one-half percent (1.5%) per month for all unpaid or delinquent contributions, calculated from the date the contributions were due to the date payment is recorded as received by the Funds;

b)   All reasonable expenses incurred in the effort to collect the unpaid or delinquent amount(s) including but not limited to attorney's fees, court costs, and auditor fees; and

c)   Liquidated damages of 20% of the amount of the unpaid or delinquent contributions.

(Gardner Aff. Ex. 1, at 1.)  One of the documents offered by the Trusts provides for a delinquency charge of ten percent (10%) of the delinquent amount while one of the documents provided by Gulf Coast contains no provision for liquidated damages.  (Gardner Aff. Ex. 4, at 4; Miller Aff. Ex. 2.) The allegations of the Complaint, when viewed in light of the referenced documents, clearly set forth a plausible claim for liquidated damages.

The Trusts' have adequately stated a claim for liquidated damages.  Gulf Coast's motion to dismiss the claim for these damages is without merit.

IV.  Transfer Venue

Gulf Coast moves to transfer this action to the Middle District of Florida.  The court has recommends referring the Union's LMRA claims to arbitration for determination of amounts owed Plaintiffs under the Agreement based on the Audit and to determine Gulf Coasts' liability for sums accruing after March 2015, and staying the Trusts' claims pending such arbitration proceedings. Accordingly,  the parties will not suffer any inconvenience from this action remaining in this court at this time.  Consequently, the court recommends denying Gulf Coast's motion to transfer venue

as moot in light with leave to refile such motion, if desired, once the arbitration proceedings are complete.

*Conclusion*

The Union's motion (ECF No. 113) to compel arbitration of the amounts due under the Agreement based on the Audit and Gulf Coast's liability for amounts accruing after the Audit should be GRANTED. The Union's LMRA claim should be DISMISSED without prejudice and the Trusts' ERISA claims should be STAYED. The Union's motion to dismiss the Trust's claim for liquidated damages should be DENIED, and alternative motion to transfer this action to the Middle District of Florida should be DENIED with leave to refile.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **June 23, 2016**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 6th day of June, 2016.


                    /s/ John V. Acosta
                    JOHN V. ACOSTA
                    United States Magistrate Judge